**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Merbi SUAREZ, Defendant–Appellee.**

**No. 90–1052**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1990.

Bob Craig, Lubbock, Tex., (Court–Appointed), for defendant-appellant.

Delonia A. Watson, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE, SMITH and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant–Appellant Merbi Suarez (Suarez) and her brother were named in a four-count indictment in which she was charged with possession of 500 grams or more of cocaine with intent to distribute, possession of 50 grams or more of cocaine base with intent to distribute, and use and carrying of a firearm during and in relation to a drug trafficking crime. Pursuant to a plea agreement, Suarez pleaded guilty to the first of those counts, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) and 18 U.S.C. § 2. In exchange for her guilty plea, the government agreed to dismiss at the time of sentencing the remaining counts against Suarez and all the counts against her brother. The district court accepted Suarez's guilty plea.

At a later sentencing hearing, Suarez received a sentence that included 145 months in prison. In determining this sentence, the district court added two "offense level" increments for the "specific offense characteristic" of possession of a firearm. *See* United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b), *reprinted in* 18 U.S.C.S. App. (1990). Suarez timely appealed

the incarceration portion of her sentence. Because we find that the district court mistakenly concluded that it could impose the two "offense level" increments for possession of a firearm without a showing of scienter, we reverse the trial court's ruling on sentencing and remand the case for further proceedings.

## I.

Police officers entered an Abilene, Texas, duplex on August 10, 1989, pursuant to a search warrant. Suarez and Ramon Suarez were co-lessees of the duplex, but the latter was not present when the search warrant was executed. When the officers entered the duplex, Suarez and her brother, Teddy Suarez, were each in a different bedroom. Upon entering Suarez's bedroom, the officers found a woman's robe near the bed. In the robe was a "baggie" containing .63 grams of 86% pure cocaine and a glass vial containing another .099 grams of cocaine. The officers also found an unloaded Walther PPKS .380 semi-automatic pistol and its fully loaded clip under the mattress of the bed on which Suarez had been lying when the officers entered the duplex.

From the garden of the duplex the officers exhumed large quantities of cocaine, cocaine base and marijuana. In the kitchen they found additional quantities of controlled substances and a scale of the type commonly used to weigh such substances for illicit distribution. In a utility room cabinet they found two bags of paraffin wax. That wax was the same color as the wax that covered several of the drug packages excavated from the garden.

Suarez admitted that she knowingly and intentionally possessed the controlled substances with intent to distribute.

At Suarez's sentencing hearing on January 5, 1990, Suarez's counsel reiterated his objection to that part of the probation officer's report which added two levels for possession of a firearm. Counsel questioned the probation officer's conclusions (1) that Suarez possessed the pistol at all and, alternatively, (2) that she possessed it in committing the offense. The principal thrust of counsel's objections, however, was the failure of the district court to make a factual determination that Suarez *intended* to possess the firearm, distinct from its factual determination that she possessed that firearm. In support of his point, counsel for Suarez invited the district court to consider *United States v. Burke*, 888 F.2d 862 (D.C.Cir.1989).

Before imposing sentence, the district court overruled Suarez's objections and stated:

"I will make a finding that based upon my recollection of the record at the detention hearing, that Ms. Suarez was in actual, constructive possession of a firearm. I also find based on my recollection of the record, that there was a connection between possession of the firearm and the possession of the cocaine."

Counsel for Suarez again objected, not only to the district court's making findings of fact based upon a recollection of what had happened in a previous proceeding, but also to the court's failing to make a factual finding of scienter.

## II.

■ In sentencing guidelines cases, this court employs the *clearly erroneous* standard in reviewing the factual findings of the district court; we review *de novo*, however, the district court's purely legal application of the guidelines. *United States v. Otero*, 868 F.2d 1412, 1413–14 (5th Cir. 1989); *see* 18 U.S.C. § 3742(e).

■ We find no merit in Suarez's claim that the district court clearly erred in its factual findings that Suarez possessed the firearm and that she did so while committing the drug offense. The operable facts more than suffice to support the district court's ultimate finding of fact that Suarez possessed the firearm. The large caliber automatic pistol and loaded clip were found under the mattress of the bed she was occupying in her own bedroom within the duplex she had been leasing for over four months. That situation is not analogous to an "unloaded hunting rifle in the closet"— the illustration of weapons possession un-

connected to the offense which the commentary to 2D1.1(b)(1) states does not increase the base offense level. The facts of Suarez's situation differ significantly from the illustration. Unlike the unloaded rifle in the illustration, Suarez's pistol, as a firearms expert testified, could have been loaded and fired within 1½ to 2 seconds. Furthermore, Suarez possessed a large caliber automatic pistol, not a hunting rifle, and her gun was under the mattress upon which she lay, not in a remote closet.

This court has approved findings of firearms possession in fact situations much more benign than the one in this case. See, e.g., *United States v. Hewin*, 877 F.2d 3 (5th Cir.1989) ("dinky little gun" in box in back seat of co-defendant's car in which defendant arrested while transporting marijuana); *United States v. Otero*, 868 F.2d 1412 (5th Cir.1989) (handgun and five rounds of ammunition found in defendant's van parked outside motel room site of cocaine sale and arrest). Other circuits are in accord. See, e.g., *United States v. Restrepo*, 884 F.2d 1294 (9th Cir.1989) (32 caliber automatic pistol discovered between mattress and box springs of defendant's bed following arrest in another part of house); *United States v. Torres*, 901 F.2d 205 (2nd Cir.1990) (search of apartment leased to female defendant and shared with male occupant revealed loaded handgun under queen-sized mattress). Suarez can take no comfort from our rejection of firearms possession in *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), wherein a loaded .38 caliber pistol was found in the defendant's bedroom after he had been arrested buying (not selling) drugs several miles from his residence.

The district court was not clearly erroneous in finding that Suarez possessed the pistol under her mattress and that "there was a connection between the possession of the firearm and the possession of the cocaine." Not only was there cocaine in the bedroom in which the gun was possessed at the instant of Suarez's arrest, but cocaine, cocaine base, marijuana, and drug paraphernalia were also found throughout Suarez's duplex and in its garden. Unlike a one-time drug sale, Suarez's crime of possession with intent to distribute involved continuing criminal conduct during which she possessed the pistol at least part of the time. Although the weapon and the crime must be connected temporally and spatially, they need not be connected functionally. *Hewin*, 877 F.2d at 5. Subject to the issue of scienter discussed below, possession *per se* "during the commission of the offense" suffices for an upward adjustment, "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n. 3). See also *Hewin*, 877 F.2d at 5 (citing *Otero*, 868 F.2d at 1414–15).

### III.

Suarez's contention that scienter is required in order to apply § 2D1.1(b)(1) to a defendant who personally possesses a firearm during a drug offense makes her case *res nova* to this circuit.[1] The district court's above quoted statements, made in overruling counsel's objections to the absence of a finding of scienter, confirm that the court made no factual finding that Suarez possessed the pistol "intentionally, recklessly or by criminal negligence." *See*

---

1. We distinguish the issue in this case from that which we recently addressed in *United States v. Aguilera–Zapata*, 901 F.2d 1209 (5th Cir.1990). This case addresses "the relevant culpability requirement for the application of section 2D1.1(b)(1) to a defendant who *personally possesses* a firearm during a [drug] offense...." *Id.* at 1214 (emphasis added). *Aguilera–Zapata* addressed "section 2D1.1(b)(1)'s application to a defendant because of a *co-defendant's knowing firearm possession* during such an offense." *Id.* (emphasis added). In *Aguilera–Zapata*, we stated that "[s]entencing courts ... may ordinarily infer that a defendant should have foreseen a

co-defendant's possession of a dangerous weapon, such as a firearm, *if the government demonstrates that another participant knowingly possessed the weapon* while he and the defendant committed the offense...." *Id.* at 1215 (emphasis added). Because *Aguilera–Zapata* clearly places the burden on the government to show that a co-defendant "knowingly possessed" a weapon, our decision here is consistent with that in *Aguilera–Zapata*. It is also consistent with the decision of the D.C. circuit in *Burke*, 888 F.2d 862 (1989) and of the fourth circuit in *United States v. White*, 875 F.2d 427 (1989).

*Burke,* 888 F.2d at 870 (quoting U.S.S.G. § 1B1.3(a)(3)).

Suarez relies on *Burke,* 888 F.2d 862 (D.C.Cir.1989), for the proposition that sentencing courts cannot enhance a defendant's sentence under § 2D1.1(b)(1) absent a showing of scienter. The *Burke* court noted that, for offenses involving drugs, U.S.S.G. § 2D1.1(b)(1) instructs the court to increase by two levels the base offense level "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense." *Burke,* 888 F.2d at 866. That court observed that although § 2D1.1(b) itself is silent as to scienter, "section 1B1.3—which supplies 'general application principles'—is not." *Id.* The *Burke* court based its decision on the version of U.S.S.G. § 1B1.3 that was in effect between January 15, 1988, and November 1, 1989. During that time § 1B1.3 provided that "[t]he conduct that is relevant to determining the applicable guideline range includes that set forth below....

(a) ... *Unless otherwise specified,* (i) the base offense level where the guideline specifies more than one base offense level, *[and] (ii) specific offense characteristics* ... shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that were otherwise in furtherance of that offense....

(3) all harm or risk of harm that resulted from the acts or omissions specified in subsections ... *if the harm or risk was caused intentionally, recklessly or by criminal negligence* ...

(4) *the defendant's state of mind, intent, motive and purpose in committing the offense....*

U.S.S.G. § 1B1.3 (emphasis added).

Section 1B1.3, the *Burke* court stated, "suggests that a defendant's mental state must be taken into account in connection with any determination whether to impose the increments authorized for firearms possession under section 2D1.1(b)." *Burke,* 888 F.2d at 866. The court held that, consequently, "section 1B1.3(a)(3) operates to require a showing of scienter under section 2D1.1(b)." *Id.*

We agree with the D.C. Circuit that the version of § 1B1.3(a)(3) in effect when the district court sentenced Burke—who was arrested on September 7, 1988, and sentenced sometime before the appellate court handed down its opinion in his case on October 31, 1988—"operate[d] to require a showing of scienter under section 2D1.-1(b)." *Burke,* 888 F.2d at 866. Admittedly, the language in § 1B1.3 upon which the court in *Burke* based its conclusion is confusing. That language does, however, suffice to "suggest[ ]," *id.,* the need for scienter. Furthermore, being a measure that imposes criminal punishment, and that, therefore, requires strict construction, § 1B1.3 necessitated the conclusion in *Burke* with which we agree.[2]

After *Burke* was decided and after Suarez was arrested in August 1989, but before she was sentenced in January 1990, § 1B1.3 was amended, effective November 1, 1989. The amendment to subsection (a)(3) deleted "if the harm or risk of harm was caused intentionally, recklessly or by criminal negligence." The amendment to (a)(4) deleted "the defendant's state of mind, intent, motive and purpose in committing the offense." Clearly, for persons arrested for a crime committed after No-

---

**2.** The reasons for which the language of § 1B1.3(a)(4) was amended in 1989 reinforce our belief that the earlier version of the guideline was arguably ambiguous as to whether scienter was required. The amendment deleted "references to harm committed 'intentionally, recklessly, or by criminal negligence' as unnecessary and *potentially confusing.*" U.S.S.G. App. C. 41 (emphasis added).

A well-established principle of statutory construction holds that "ambiguities in criminal statutes must be resolved in favor of lenity." *United States v. Batchelder,* 442 U.S. 114, 121, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) (citations omitted).

vember 1, 1989, § 1B1.3 no longer requires a showing of scienter under section 2D1.-1(b). Because Suarez committed her crime before the amendment but was not sentenced until after it became effective, we must decide which version of § 1B1.3 the district court should have applied in sentencing Suarez.

This court has never held specifically which version of the guidelines applies at the time of sentencing. *U.S. v. Woolford,* 896 F.2d 99, 102 n. 4 (5th Cir.1990). But we have noted in dictum that an increase in sentence based on an amendment to the guidelines effective after the offense was committed "would be an obvious ... violation" of the *ex post facto* clause in article 1 of the United States Constitution. *Id.; see* U.S. Const. art. 1, § 9, cl. 3.[3] Were the district court now to find that Suarez lacked the scienter required by the pre-November 1989 version of § 1B1.3, its enhancement of a sentence under the current version (which does not require scienter) would obviously violate the *ex post facto* clause.

The *ex post facto* problem arises in part because the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a)(4) and (5), states that in imposing sentences courts should consider guidelines and policy statements issued by the Sentencing Commission that are in effect on the date of sentencing.[4]

Application of the November 1, 1989, version of § 1B1.3 to Suarez's sentence included an ineluctable two-level increase for possession of a firearm—an increase that, according to the reasoning of *Burke,* it could not have included under the earlier version of § 1B1.3 without a finding of scienter.

As long ago as 1798, the Supreme Court summarized those laws which the words and the intent of the *ex post facto* clause prohibited. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). These laws included the following:

> Every law that aggravates a crime, or makes it greater than it was, when committed [or] ... that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed [or] ... that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder,* 3 U.S. (3 Dall.) at 390; *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987); *accord Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)).

To be *ex post facto,* a law first "must be retrospective, that is, it must apply to

---

**3.** The court in *Aguilera–Zapata,* 901 F.2d 1209 (5th Cir.1990), did not address the *ex post facto* issue. The opinion does not reveal when Aguilera's sentencing occurred. In determining whether a defendant should be held accountable for a co-defendant's possession of a firearm, the court had to decide whether to use amended Application Note 1, effective November 1, 1989, or its precursor in interpreting the language in § 1B1.3(a)(1) which requires the sentencing court to consider the conduct "for which the defendant would be otherwise accountable." *Aguilera–Zapata,* 901 F.2d at 1213–14. "Even though [amended Application Note 1] was not effective at the time of the commission of the offense in question," the court applied that amended Note "because this amendment was intended only to clarify section 1B1.3's application and, therefore implicitly was not intended to make any substantive changes to it or its commentary...." *Aguilera–Zapata,* 901 F.2d at 1213–14. We distinguish the amendment to an Application Note from the amendment, as in

this case, to a specific section. As the *Burke* analysis shows, the amendment made a substantive change. Furthermore, as we discussed in footnote 2 above, the Sentencing Guidelines Commission noted that the language of § 1B1.3(a)(4) was before amendment "potentially confusing." U.S.S.G. App. C. 41.

**4.** 18 U.S.C. § 3553 states that

> "(a) [t]he court, in determining the particular sentence to be imposed, shall consider ... (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced."

events occurring before its enactment"; and second "must disadvantage the offender" it affects. *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). No *ex post facto* violation occurs, however, "if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.' " *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298).

To apply the amended sentencing guideline to Suarez's crime would be to apply it retrospectively to events that occurred before the amendment was enacted. Suarez was arrested before November 1, 1989, and sentenced after November 1, 1989, the effective date of the amendment. Before November 1989 the government had to show scienter before a sentence for a drug-related crime could include a two-level increase for possession of a firearm. After November 1989, the government had to show mere possession; a much lighter burden. The amendment clearly "changes the legal consequences of acts completed before its effective date." *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965.

The amendment also substantially disadvantages Suarez. If the court applies the amendment in sentencing her, she may receive a greater sentence than she otherwise might have under the pre-November 1989 version. A "lawmaker cannot retroactively foreclose even the *possibility* that a criminal defendant would receive a lesser sentence than was potentially available at the time the crime was committed." *Rubino v. Lynaugh*, 845 F.2d 1266, 1278 (5th Cir. 1988) (King, J., concurring) (emphasis in original) (citing *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937)).

Because amended § 1B1.3 may increase Suarez's punishment, the amendment is not simply a change in procedure which does not affect a matter of substance. The change could alter the length of time that Suarez spends in prison. Suarez's interest in legally acquiring her freedom from custody sooner than she otherwise would under amended § 1B1.3 constitutes a "substantial personal right."

Finally, finding an *ex post facto* law in this case furthers one of the purposes behind the constitutional prohibition on such laws: "to prevent prosecution and punishment without fair warning." *Rubino*, 845 F.2d at 1272 (citing *Miller*, 482 U.S. at 429–30, 107 S.Ct. at 2450–51). Although the sentencing statute states that the guidelines to apply are those "in effect on the date the defendant is sentenced," 18 U.S.C. § 3553(a)(4) & (5), such constructive notice that the guidelines may change cannot override the constitutional prohibition against *ex post facto* laws. *See Miller*, 482 U.S. at 431, 107 S.Ct. at 2451 ("The constitutional prohibition against *ex post facto* laws cannot be avoided merely by adding to a law notice that it might be changed."); *Rubino*, 845 F.2d at 1280 (King, J., concurring). Suarez is entitled to assume that the guidelines in effect when she committed her crime would apply when she was sentenced.

### Conclusion

We affirm the district court's findings that Suarez possessed a firearm and that possession of the firearm and possession of the cocaine were connected. However, because the district court, without making a finding of scienter, concluded that Suarez's sentence could be enhanced for firearm possession, we reverse the district court's sentencing determination and remand for further proceedings consistent with this opinion. *See* 18 U.S.C. § 3742(f)(1). In re-sentencing Suarez, the district court may impose the increments which § 2D1.1(b) authorizes if, but only if, it finds by a preponderance of the evidence that Suarez possessed the firearm found under her mattress "intentionally, recklessly or by criminal negligence." U.S.S.G. § 1B1.3(a)(3) (effective 15 January 1988 through 31 October 1989).

AFFIRMED in part, REVERSED and REMANDED in part.