**UNITED STATES of America, Plaintiff,**

**v.**

**Michelle Ann BELL, Defendant.**

**No. CR 91–2016.**

United States District Court,
N.D. Iowa, E.D.

March 30, 1992.

Steven M. Colloton, Richard L. Murphy, Asst. U.S. Attys., Cedar Rapids, Iowa, for plaintiff.

Lorraine Snead Ingels, Klinger, Robinson, McCuskey & Ford, Cedar Rapids, Iowa, for defendant.

## ORDER

DAVID R. HANSEN, Circuit Judge, Sitting by Designation.

This matter is before the court on plaintiff's sentencing memorandum, filed March 5, 1992. Defendant filed her memorandum of authorities regarding ex post facto sentencing issue on March 13, 1992. On March 25, 1992, this court entered an order accepting the United States Sentencing Commission's amicus curiae brief as amended, filed March 20, 1992. The Sentencing Commission generally agrees with plaintiff's position and raises additional concerns regarding the administrative and policy implications of this court's ruling on the issue presented.

## A. BACKGROUND

On November 19, 1991, defendant pled guilty to one count of being a felon in possession of a firearm, on or about July 2, 1991, in violation of 18 U.S.C. § 922(g)(1). Under the Sentencing Guideline in effect on July 2, 1991, defendant's base offense level would be 12. *See* U.S.S.G. § 2K2.1(a)(2) (Nov.1990) (base offense level of "12, if the defendant is convicted under

18 U.S.C. § 922(g)"). On November 1, 1991, several amendments to Sentencing Guideline § 2K2.1 took effect. The United States asserts that under the amended Guideline, defendant's base offense level would be 20. *See* U.S.S.G. § 2K2.1(a)(4)(A) (Nov.1991) (base offense level of "20, if the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense."). Further, the November 1, 1991 amendments added a provision for an additional four level upward adjustment if the defendant possessed the firearm with "knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5) (Nov.1991). The government states that it intends to request this adjustment.

The previous policy of the Department of Justice has been "that the guideline in effect on the date the offense was committed should be used instead of a newer guideline if the new guideline increases the guideline sentence above that which was in effect on the date of the offense." U.S. Dep't of Justice, *Prosecutors Handbook on Sentencing Guidelines*, 72 (1987). The Department has reevaluated that position and has authorized plaintiff to request the court to follow 18 U.S.C. § 3553(a)(4), which provides that the sentencing judge should consider the Guidelines "in effect on the date the defendant is sentenced."

Neither Congress nor the states may pass any "ex post facto Law." U.S. Const. art. 1, § 9, cl. 3; § 10, cl. 1. The Ex Post Facto Clause includes, inter alia, " '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). The central concern of this aspect of the Ex Post Facto Clause is for " 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.' " *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham*,

450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)).

■ The issue presented is whether the application of the November 1, 1991 amendments to U.S.S.G. § 2K2.1 to defendant would violate the Ex Post Facto Clause.

### B. CIRCUIT CASE LAW

The court begins with an examination of the cases decided by the circuit courts of appeals which address the relationship between the Guidelines and the Ex Post Facto Clause. In *United States v. Swanger*, 919 F.2d 94 (8th Cir.1990) (per curiam), the district court had sentenced Swanger under the Guidelines in effect at the time of sentencing, which provided for an offense level greater than provided for by the Guidelines in effect at the time of his offense. The government "conceded error and agree[d] that the case should be remanded for resentencing." *Id.* at 95. The court stated that "[u]nder these circumstances, sentencing under the amended Guidelines violated the ex post facto clause of the Constitution." *Id.* at 95 (citing *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), and *United States v. Suarez*, 911 F.2d 1016, 1021 (5th Cir.1990)). *See also United States v. Lenfesty*, 923 F.2d 1293, 1299 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991) ("Because the net sentencing range under the Guidelines in effect when Redinger sold crank was less than the net sentencing range of the Guidelines in effect at sentencing, the District Court properly began its calculations with the former, less harsh, range.").

All of the other circuits, except for the Federal Circuit, have stated, without much discussion, that the retroactive application of a Guideline that increases the sentence to be imposed violates the Ex Post Facto Clause. *See United States v. Harotunian*, 920 F.2d 1040, 1042 (1st Cir.1990) (applying amended guideline which increased base offense level by 4 would raise ex post facto concerns); *United States v. Young*, 932 F.2d 1035, 1038 n. 3 (2d Cir.1991); *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir. 1991) (court generally applies Guidelines in effect at time of sentencing, "[b]ut where such retroactivity results in harsher penalties, Ex Post Facto Clause problems arise, and courts must apply the earlier version."); *United States v. Morrow*, 925 F.2d 779, 782–83 (4th Cir.1991); *United States v. Suarez*, 911 F.2d 1016, 1021–22 (5th Cir. 1990); *United States v. Nagi*, 947 F.2d 211, 213 n. 1 (6th Cir.1991), *petition for cert. filed*, No. 91–7564 (U.S. Mar. 9, 1992); *United States v. Bradach*, 949 F.2d 1461, 1465 n. 5 (7th Cir.1991); *United States v. Sweeten*, 933 F.2d 765, 772 (9th Cir.1991); *United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991) ("[T]he *ex post facto* clause prohibits retroactive application of a changed guideline if the change disadvantages the defendant."); *United States v. Worthy*, 915 F.2d 1514, 1516 n. 7 (11th Cir.1990) ("[A]n amended guideline will not be applied if its effect would be to subject a defendant to an increased sentence."); *United States v. Molina*, 952 F.2d 514, 522–23 (D.C.Cir.1992) ("[W]hen an amendment to a Guideline increases the punishment imposed, the *ex post facto* clause of the Constitution prevents retroactive application of the amended Guideline to crimes committed prior to the effective date of the amendment."). Almost all of these cases cite to *Miller v. Florida.*

The only case suggesting (but not holding) that the Ex Post Facto Clause does not apply to the Sentencing Guidelines is *United States v. Bader*, 956 F.2d 708 (7th Cir. 1992).

Some courts have held or implied that the ex post facto clause of the Constitution requires courts to use the guidelines that were in effect on the date of the crime. To the extent these courts explain their conclusions—the opinions are brief, and some do not appear to recognize that they entail holding a statute unconstitutional—they equate a change in the guidelines with an increase in the punishment prescribed by law. *Miller v. Florida* ... shows that sentencing guidelines may be "laws" for purposes of the ex post facto clause. Still, it remains to determine how the laws have changed,

and whether the particular change exceeds the constitutional constraint. *Bader,* at 709 (citations omitted).

■ The government argues that this court need not follow the explicit words of the Eighth Circuit's decisions in *Swanger* and *Lenfesty* or the nearly unanimous views on this issue expressed by the other circuits, because all of these cases were decided either on the government's concession or are a sua sponte declaration not backed by reasoning and, thus, were not decided on each court's independent review of the constitutional issue. *See Casey v. United States,* 343 U.S. 808, 72 S.Ct. 999, 96 L.Ed. 1317 (1952) ("To accept in this case [the Solicitor General's] confession of error would not involve the establishment of any precedent."); *United States v. Le-May,* 952 F.2d 995, 998 n. 3 (8th Cir.1991). The court finds that it need not address the government's argument that these cases have no precedential value because, after examining the government's argument on the merits, the court concludes that ex post facto does apply to the Guidelines. The court does note that all of these cases, viewed collectively, constitute a strong statement by the courts of appeals (except perhaps for the Seventh Circuit) that, at first blush, the application of an amended Guideline resulting in the imposition of a greater sentence violates ex post facto.

### C. EX POST FACTO AND THE JUDICIAL BRANCH

■ The government contends that the Ex Post Facto Clause does not apply to the judicial branch, and because the Sentencing Commission is a judicial branch agency, its actions are not subject to ex post facto analysis. Congress placed the Sentencing Commission in the judicial branch as an independent commission. 28 U.S.C. § 991(a). In *Mistretta v. United States,* 488 U.S. 361, 384–97, 109 S.Ct. 647, 661–67, 102 L.Ed.2d 714 (1989), the Court concluded that Congress's placement of the Commission in the judicial branch does not violate the principle of separation of powers. In *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977), the

Court noted that while "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch, ... the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty ... [and] that right is protected against judicial action by the Due Process Clause of the Fifth Amendment." *Id.* at 191–92, 97 S.Ct. at 992–93 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), and other cases). The Ex Post Facto Clause's prohibition against a retroactive increase in punishment applies to unforeseeable interpretations by the judicial branch which increase the punishment applicable to an offense. *See, e.g., Helton v. Fauver,* 930 F.2d 1040, 1045 (3d Cir. 1991); *Dale v. Haeberlin,* 878 F.2d 930, 934 (6th Cir.1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990).

The only case the court has found specifically addressing this issue with respect to the Sentencing Guidelines is the recent decision of the Tenth Circuit in *United States v. Saucedo,* 950 F.2d 1508 (10th Cir.1991).

We recognize that "[t]he ex post facto clause is a limitation upon the powers of the Legislature." Nonetheless, we have no trouble applying it to an act by the Sentencing Commission. Although the Sentencing Commission was established "as an independent commission in the judicial branch of the United States," the Supreme Court has recognized that "the Commission ... is an independent agency in every relevant sense." Further, "the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit either within the 180–day waiting period, or at any time." Courts have uniformly recognized that the ex post facto clause prohibits a retroactive application of a sentencing guideline where it would disadvantage the defendant.

*Saucedo,* 950 F.2d at 1515 n. 12 (citations omitted).

The court is not persuaded by the government's argument that an ex post facto analysis of the Sentencing Guidelines is inappropriate because the Commission is a judicial branch agency.

The government also argues that amendments to the Sentencing Guidelines are "foreseeable" and therefore defendant received fair warning. The government contends that at the time defendant committed the offense, she was on notice that the maximum penalty under the statute is 10 years. The court notes that the government's argument is contradicted somewhat by the Sentencing Commission. "An ordinary person untrained in [the Guidelines'] application can hardly be expected to decipher them to the point of deriving meaningful notice of how a specific change will translate into a prescribed range of punishment." Amicus brief, filed March 20, 1992, at 7. In addressing a similar argument in *Miller*, the Supreme Court stated that "[p]etitioner simply was warned of the obvious fact that the sentencing guidelines law—like any other law—was subject to revision. The constitutional prohibition against ex post facto laws cannot be avoided merely by adding to a law notice that it might be changed." *Miller*, 482 U.S. at 431, 107 S.Ct. at 2451.

The government argues that the Due Process Clause has never been held to require that a defendant be given notice of the precise punishment that defendant will receive. *Cf. United States v. Salva*, 902 F.2d 483, 486–87 (7th Cir.1990) (court not required to inform defendant at plea of likely Guidelines sentence); *United States v. DeFusco*, 949 F.2d 114, 118 (4th Cir.1991) (same). Although when taking a plea the judge is not required to inform the defendant of the likely Guidelines sentence, the court is required to inform the defendant of the applicable maximum and any mandatory minimum sentences and that "the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circum-

stances." Fed.R.Crim.P. 11(c)(1). However, information regarding punishment is required for a guilty plea in order to insure that the plea is knowingly and intelligently made and has little relation to the Ex Post Facto Clause, which is concerned with fair warning of the consequences of the criminal act *at the time the act is committed.* Generally, the court is not required to inform a defendant who does not desire to plead guilty of the potential maximum and mandatory minimum sentences or that the Guidelines will apply.[1] Thus, the government's argument here is not on point.

### D.  *MILLER v. FLORIDA*

The Supreme Court's unanimous decision in *Miller* involved an ex post facto challenge to Florida's sentencing guideline system. In 1983, the Florida legislature established a guidelines commission to develop a system of sentencing guidelines and to make recommendations to the Supreme Court of Florida, which was to develop a final system of guidelines. Fla.Stat. ch. 921.001 (1983). The guidelines promulgated by the Supreme Court of Florida would take effect unless the legislature affirmatively delayed the implementation of the guidelines. Fla.Stat. ch. 921.-001(4)(a) (as amended by 1983 Fla.Laws, ch. 83–87, § 2). The guidelines as adopted created a system of presumptive sentences for various categories of offenses. The sentencing judge was required to sentence within the presumptive range unless stringent requirements for departure from that range were met. The guidelines commission was authorized to meet periodically to "review sentencing practices and recommend modifications to the guidelines." Fla.Stat. ch. 921.001(3) (1983). The Florida Supreme Court could then revise the sentencing guidelines, but any revisions would become effective "only upon the subsequent adoption by the Legislature of legislation implementing the guidelines as then revised." Fla.Stat. ch. 921.001(4)(b) (1983). Between Miller's commission of the offense and his sentencing, the guidelines were re-

---

1. The court notes that some enhanced penalty provisions do require notice to the defendant by the indictment. The court also notes that the

right to effective assistance of counsel may require that counsel inform a defendant of these matters.

vised so that the presumptive sentence applicable to Miller increased from a range of 3½ to 4½ years to a range of 5½ to 7 years. In evaluating the ex post facto claim, the United States Supreme Court applied a two part test: (1) the law must be retrospective, i.e., the law applies to events occurring before its enactment; and (2) the application of the revised law must disadvantage the defendant. *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451.

The government argues that the Florida sentencing guidelines system discussed in *Miller* is distinguishable from the federal Sentencing Guidelines. The government contends that the federal Sentencing Guidelines are more akin to the old Parole Commission Guidelines, which several courts found were not "laws." *See, e.g., DiNapoli v. Northeast Regional Parole Comm'n,* 764 F.2d 143 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *United States ex rel. Forman v. McCall,* 776 F.2d 1156, 1163 (3d Cir.1985), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986). Although not specifically finding that the parole guidelines are not "laws," the Eighth Circuit has stated that it is "favorably impressed" with those decisions. *See Yamamoto v. U.S. Parole Comm'n,* 794 F.2d 1295, 1297 n. 6, 7 (8th Cir.1986) (resting decision on conclusion that parole guidelines do not significantly restrict Parole Commission's discretion). *See also Morgan v. Sullivan,* 856 F.2d 1188, 1189 (8th Cir.1988), *cert. denied,* 490 U.S. 1027, 109 S.Ct. 1761, 104 L.Ed.2d 197 (1989) (finding without merit argument that application of revised parole guidelines violates ex post facto).

In *Miller,* the court distinguished the Florida guidelines from the parole guidelines. The court found that unlike the parole guidelines: (1) the Florida guidelines are enacted by the legislature and have the

force and effect of law; (2) the Florida guidelines are not flexible guideposts for use in the exercise of discretion but create a high hurdle for departing from the presumptive sentence; and (3) the Florida guidelines directly affect the sentence a defendant receives. *Miller,* 482 U.S. at 435, 107 S.Ct. at 2453.

### 1. ENACTING AUTHORITY

Under the Florida system, amendments to the Florida guidelines must be affirmatively enacted by the Florida legislature. The initial set of guidelines, however, went into effect when the Florida legislature did not affirmatively act to delay their implementation. *See* Fla.Stat. ch. 921.001(4)(a).[2] Under the federal system, guidelines promulgated by the Sentencing Commission become effective without explicit action by Congress. *See* 28 U.S.C. § 994(p) (Guidelines promulgated by Commission take effect "on a date specified by the Commission ... except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress."). "[T]he Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit." *Mistretta,* 488 U.S. at 393–94, 109 S.Ct. at 665–66. Although the Parole Commission was statutorily mandated to promulgate guidelines for the exercise of its discretionary authority, Congress retained no oversight authority over the Parole Commission guidelines, and amendments to the Parole Guidelines were not required to be transmitted to or lie before the Congress for scrutiny before they became effective. *See* 18 U.S.C. § 4203 (repealed Pub.L. 98–473, Title II, § 218(a)(5), Oct. 12, 1984).

■ The question is whether the Sentencing Guidelines are "laws." Justice Scalia clearly views the Sentencing Guidelines as laws. *See Mistretta v. United*

---

**2.** Subsequently, the Supreme Court of Florida found that the initial set of guidelines promulgated by the Supreme Court were invalid because they were not affirmatively enacted by the Legislature in violation of article II, section 3, of the Florida Constitution. *See Smith v. Florida,* 537 So.2d 982 (1989). The Court found that the

Guidelines became effective on July 1, 1984, when the Florida Legislature affirmatively enacted the entire set of guidelines in enacting a minor amendment. In *Mistretta* the Supreme Court concluded that the federal Sentencing Guidelines system does not violate separation of powers.

*States,* 488 U.S. 361, 413, 109 S.Ct. 647, 675, 102 L.Ed.2d 714 (1989) (Scalia, J., dissenting) (The Guidelines "have the force and effect of laws, prescribing the sentences criminal defendants are to receive."). *See also United States v. Nottingham,* 898 F.2d 390, 393 (3d Cir.1990) ("[S]entencing guidelines are not legislative enactments but have the force of law."); *United States v. Bafia,* 949 F.2d 1465, 1475 (7th Cir.1991). A sentencing judge's application of the Guidelines is mandatory, not discretionary. *See Mistretta,* 488 U.S. at 367, 391, 109 S.Ct. at 652, 664 ("[T]he Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases."). *See also* 18 U.S.C. § 3553(b).

*Mistretta* is the primary Supreme Court case discussing the nature of the Guidelines. *Mistretta* does contain language suggesting that the Guidelines are not "laws" in the legislative sense:

> Nor do the Guidelines, though substantive, involve a degree of political authority inappropriate for a nonpolitical Branch. Although the Guidelines are intended to have substantive effects on public behavior (as do the rules of procedure), they do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations—impose sentences within the broad limits established by Congress.

*Mistretta,* 488 U.S. at 396, 109 S.Ct. at 667.

*Mistretta* also contains language suggesting that the *Guidelines* are "laws." The majority in *Mistretta* concluded that "the role of the Commission in promulgating guidelines for the exercise of that judicial function bears considerable similarity to the role of this Court in establishing rules of procedure under the various enabling Acts." *Mistretta,* 488 U.S. at 391, 109 S.Ct. at 664. The Court also stated "the degree of political judgment about crime and criminality exercised by the Com-

mission and the scope of the substantive effects of its work does to some extent set its rulemaking powers apart from prior judicial rulemaking. *Cf. Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (state sentencing guidelines not procedural)." *Mistretta,* 488 U.S. at 392–93, 109 S.Ct. at 665–66. The Court characterized the Guidelines as substantive. *Id.* at 396, 109 S.Ct. at 667. In *Miller,* the Court noted that the Ex Post Facto Clause affects substantive changes in the law, not procedural changes. *Miller,* 482 U.S. at 433, 107 S.Ct. at 2452. The above observations in *Mistretta* suggest that the Guidelines are a constitutional delegation of some legislative power from Congress to the Commission.

Congress has affirmatively enacted a law directing the courts to apply the mandatory Guidelines that are in effect at the time of sentencing. 18 U.S.C. §§ 3553(a)(4), 3553(b). The government suggests that the court should not consider whether this legislative act is sufficient to make the Guidelines "laws" subject to ex post facto analysis and argues that *Miller* and the parole guidelines cases focused on the nature of the amended guidelines and the process by which they were promulgated rather than on the source of the command that they be applied in all cases. This court disagrees. The Florida guideline amendments were affirmatively enacted by the legislature and, accordingly, the Court did not need to consider the "source" of the guidelines because they were clearly legislative. The Eighth Circuit has considered the fact that the parole guidelines were not made mandatory by Congress and that "parole eligibility determinations would remain a matter of discretion with the Parole Commission." *See Yamamoto,* 794 F.2d at 1299. The United States Supreme Court recently stated in *United States v. R.L.C.,* — U.S. ——, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992):

> [The government] maintains that in any event the Sentencing Commission's congressional authorization to establish sentencing guidelines does not create affirmative authority to set punishments for crime, and that the Guidelines do not

purport to authorize the punishments to which they relate.

But this is too easy. The answer to any suggestion that the statutory character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory. *See* 18 U.S.C. § 3553(b).

*Id.* at ——, 112 S.Ct. at 1334. The fact that Congress has made the Sentencing Guidelines mandatory is a strong factor which leads this court to conclude that the Sentencing Guidelines are "laws."

Without demeaning the important work the Commission has done and is chartered to do, this court agrees with Justice Scalia's characterization of the Sentencing Commission as a "sort of junior-varsity Congress." *Mistretta,* 488 U.S. at 427, 109 S.Ct. at 683 (Scalia, J., dissenting). "Clearly, Congress may not, by delegation, escape constitutional limitations on its power. If Congress would be prevented by the ex post facto clause from retroactively revising [the parole] guidelines ..., so too would an agency acting pursuant to congressional mandate." *Yamamoto,* 794 F.2d at 1300 (citations omitted). *See also Prater v. U.S. Parole Commission,* 802 F.2d 948, 954 (7th Cir.1986) ("[I]f Congress authorizes an agency to make rules ... the rules are as if made by Congress; Congress could have made them, if it had had time."). "Subtle *ex post facto* violations are no more permissible than overt ones.... [T]he constitutional prohibition is addressed to laws, 'whatever their form,' which ... increase the punishment." *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 2721, 111 L.Ed.2d 30 (1990) (citations omitted).

A serious difficulty with the government's contention that the Guidelines are not laws is how courts should treat those crime and fact specific Guidelines that Congress expressly dictated be promulgated. *See* Guidelines Manual (Nov. 1, 1991) at 433–35. For example, Public Law 101–647, § 401 requires certain specific offense characteristic adjustments for the kidnapping of children. Other congressional enactments require the Commission to establish a minimum base offense level for certain offenses. It would be incongruous to apply the Ex Post Facto Clause to Guidelines established by affirmative Congressional enactments and to not apply the Ex Post Facto Clause to the Guidelines that became effective because Congress did not act to disapprove the proposed Guideline, when both such Guidelines operate to retroactively increase punishment.

A key consideration in determining whether guidelines promulgated by an agency are "laws" is how much discretion a promulgating authority retains to modify its guidelines. *See Bailey v. Gardebring,* 940 F.2d 1150, 1156 (8th Cir.1991) (opinion of Bowman, J.) (citing *Smith v. United States Parole Comm'n,* 875 F.2d 1361, 1367 (9th Cir.1989)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). Congress provided very explicit directions to the Sentencing Commission on how the Guidelines were to be structured. *See* 28 U.S.C. § 994; *Mistretta,* 488 U.S. at 374–78, 109 S.Ct. at 655–58. Congress retained oversight authority over those Guidelines. 28 U.S.C. § 994(p). In contrast, the Congressional direction to the Parole Commission was quite vague. *See* 18 U.S.C. §§ 4203, 4206. Congress retained no oversight authority over the parole guidelines. The court finds that the Sentencing Commission's discretion with respect to the Sentencing Guidelines is substantially restricted as compared to the Parole Commission's discretion.

The court concludes that the Sentencing Guidelines are "laws" for the purpose of ex post facto analysis.

### 2. EASE OF DEPARTURE

■ A departure from the Florida guidelines requires the sentencing judge to find " 'clear and convincing reasons' that are 'credible,' 'proven beyond a reasonable doubt,' and 'not ... a factor which has already been weighed in arriving at a presumptive sentence.' " *Miller,* 482 U.S. at

435, 107 S.Ct. at 2453.[3] In contrast, the Parole Commission could depart from its guidelines for "good cause." 18 U.S.C. § 4206(c). As discussed by the Supreme Court, the parole guidelines are "flexible 'guideposts' for use in the exercise of discretion," while the Florida guidelines "create a high hurdle that must be cleared before discretion can be exercised." *Miller*, 482 U.S. at 435, 107 S.Ct. at 2453. Review of the Parole Commission's decision to depart was limited to whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Blue v. Lacy*, 857 F.2d 479, 481 (8th Cir.1988) (citing cases). With respect to the federal Sentencing Guidelines, "[t]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) [referring to the Guidelines promulgated by the Sentencing Commission] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The Guidelines set forth policy statements to guide the court's consideration of departures. *See* U.S.S.G. ch. 5, pts. H, K. At least in this circuit, those policy statements are mandatory. *See United States v. Kelley*, 956 F.2d 748 (8th Cir. 1992) (en banc) (specifically holding that policy statement § 5K1.1 must be followed by sentencing courts and suggesting that other policy statements are binding as well).

▇▇▇ Statistically, the 1990 Annual Report of the Commission found that 83.4% of sentences were within the guideline range, 7.5% involved a downward departure for substantial assistance, 6.9% involved a downward departure for other reasons, and 2.3% involved an upward departure. A three-part test is used on appeal to evaluate departures: (1) whether the circumstances relied upon by the district court are the type of circumstances covered by § 3553(b); (2) whether those circumstances

are present in this case; and (3) whether the degree of departure is reasonable. *United States v. Desormeaux*, 952 F.2d 182, 184 (8th Cir.1991); *United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir. 1990). A discretionary refusal to depart is not reviewable, and a mistaken belief that grounds for departure do not exist is reviewable. *See United States v. Sayers*, 919 F.2d 1321, 1324 (8th Cir.1990).

Although departures from the federal Guidelines are not quite as difficult to accomplish as departures from the Florida guidelines, the court concludes that the federal Guidelines "create a high hurdle that must be cleared before discretion can be exercised" and, unlike the parole guidelines, are not merely "flexible 'guideposts' for use in the exercise of discretion." *Miller*, 482 U.S. at 435, 107 S.Ct. at 2453.

**3. EFFECT OF APPLICATION OF GUIDELINES ON SENTENCE IMPOSED**

The Supreme Court found that amendments to the Florida guidelines "directly and adversely affect the sentence" that a defendant will receive. *Miller*, 482 U.S. at 423, 107 S.Ct. at 2446. Although *Miller* does not expand upon this point, the Court is apparently noting that changes in the Florida guidelines, if applied retroactively, would affect the sentence imposed by the court, and that changes in the parole guidelines, if applied retroactively, would affect the sentence actually served but would not directly affect the sentence imposed by the sentencing judge. *See also Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 714, 62 L.Ed.2d 723 (1980) (Rehnquist, Circuit Justice) ("The [parole] guidelines operate only to provide a framework for the Commission's exercise of its statutory discretion. The terms of the sentence originally imposed have in no way been altered."). In this respect, the federal Sentencing Guidelines are similar to the Florida guidelines in that a retroactively ap-

---

**3.** The standard for departure discussed in *Miller* was established by case law. In 1987, the Florida legislature changed the law to provide that "[a] departure sentence shall be based on cir-

cumstances or factors which reasonably justify the aggravation or mitigation of the sentence" which are proven by a preponderance of the evidence. Fla.Stat. ch. 921.001(5) (1987).

plied amendment, such as the amendments to § 2K2.1, would affect the sentence actually imposed.

## 4. CONCLUSION

With respect to all three differences between the Florida guidelines and the parole guidelines discussed by the Supreme Court, the federal sentencing Guidelines are much more similar to the Florida guidelines. The federal Guidelines have the force and effect of law, the Guidelines create a "high hurdle" to be cleared before a departure may be made, and amendments to the Guidelines directly affect the sentence imposed. Accordingly, the court holds that the federal Sentencing Guidelines are governed by the test set forth in *Miller*.

## E. APPLICATION

As previously noted, *Miller* sets forth a two-part test: (1) the law must be retrospective, i.e., the law applies to events occurring before its enactment; and (2) the application of the revised law must disadvantage the defendant. *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451. The November 1, 1991 amendments to U.S.S.G. § 2K2.1 clearly meet this test. First, those amendments became effective November 1, 1991, and the government requests the court to apply those amendments to an offense committed on July 2, 1991. Second, the application of those amendments would disadvantage defendant because it would increase her base offense level and would result in a longer sentence being imposed upon her by the court.

## F. ADMINISTRATIVE AND POLICY CONCERNS

In its amicus brief, the United States Sentencing Commission raises numerous administrative and policy concerns regarding the application of ex post facto to the Sentencing Guidelines. First, the Commission notes the complex legal and administrative issues which courts must address in applying ex post facto to the Guidelines: (a) whether an amendment is clarifying or substantive; (b) whether substantive amendments are to be considered on an individual basis or whether the court must examine the Guidelines as a whole as they existed at the time of the commission of the offense and as they exist at the time of sentencing; (c) how a court should apply the Guidelines to multiple counts of conviction spanning different amendment effective dates; and (d) whether an amended Guideline provides a basis for upward departure. Second, the Commission notes various policy and administrative problems which negatively impact on the ability of the Sentencing Commission to perform its mission: (a) a concern on the part of judges, practitioners, and probation officers that Guidelines should be sparingly amended in order to avoid the administrative problems discussed above; (b) the avoidance of sentencing disparity; (c) more complicated monitoring and analysis of sentencing practices; and (d) difficulty in training persons involved in the sentencing process. While the court recognizes that the administrative and policy concerns expressed by the Commission are serious (Appendix C to the Sentencing Guidelines contains in its 254 pages the 434 numbered amendments enacted since November 1, 1987), the constitutional right of defendants to be free from an ex post facto increase in their punishment must take precedence. This court is unwilling to set the Constitution to one side so that Guidelines sentencing is easier to implement.

## G. CONCLUSION

Accordingly, the court holds that the application of the November 1, 1991 amendments to the Guidelines to the defendant would violate both the Ex Post Facto Clause and the principle of ex post facto contained within the Due Process Clause. The court will apply the Guidelines in effect on July 2, 1991, to defendant.

## ORDER:

Accordingly, It Is Ordered:

The court finds that the application of the November 1, 1991 amendments to the Sentencing Guidelines to defendant would violate both the Ex Post Facto Clause of the Constitution and the principle of ex

post facto contained within the Due Process Clause. The court will apply the Sentencing Guidelines in effect on July 2, 1991, to defendant.

Done and Ordered.