FOR THE FIFTH CIRCUIT

No. 92-4356

Summary Calendar

United States of America,

Plaintiff-Appellee,

versus

Ronald Peters and Thomas Pullen,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Louisiana

(November 11, 1992)

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Ronald Peters and Thomas Pullen appeal their sentences after each pleaded guilty to one charge of conspiring to illegally export helicopters in violation of the Arms Export Control Act, 18 U.S.C. § 371; 22 U.S.C. § 2778. Both defendants challenge the district court's interpretation and application of U.S.S.G. § 2M5.2, and the addition of offense points for managerial involvement under § 3B1.1(c). Pullen complains of the refusal to depart downward from the guideline sentence range in his case. We affirm.

In January 1990, a confidential informant contacted the U.S. Customs Service regarding a suspicious sale of helicopters. Peters had solicited the informant to purchase seven Agusta Bell Model 204

helicopters    from    a    California    company.

Helicopters which are specifically designed, modified, or equipped for military purposes are included on the United States Munitions List, 22 C.F.R. § 121.1, Category VIII(a), and may not be exported without a license.  22 U.S.C. § 2778.  The Model 204 helicopter is equipped with "hard points" to which weapons systems may be attached, allowing easy adaptation to military purposes.[1] There is no dispute that export of the Model 204 without a license is prohibited.

Peters and Pullen told the informant that the helicopters were to be purchased and taken to Canada, where they would be resold to an unnamed foreign country unfriendly to the United States. Defendants never attempted to obtain an export license.  Peters represented to the informant that he was the broker among the parties involved, and Pullen purported to be the foreign buyer's representative.  Trying to obtain financing for the helicopter purchase, they convened a number of meetings and telephone conversations which included the informant between January and June, 1990.  At least one person other than the defendants and the informant attended one of the meetings.  Due to financial difficulties the conspiracy terminated in the summer of 1990.

When Peters was notified that he was the target of a federal investigation, he immediately began to cooperate.  The government credited his substantial cooperation for disclosing Pullen's

---

[1] The helicopters involved here were once owned by the Dutch military.

identity and convincing Pullen to plead guilty. As a result the government moved for a downward departure from the Sentencing Guidelines for Peters under § 5K1.1. Pullen, on the other hand, told a probation officer that he believed he had done nothing wrong since the conspiracy had not achieved its objective. He also expressed bitterness toward the informant.

Both defendants pleaded guilty to a conspiracy charge. The Pre-Sentencing Report for both defendants established a final offense level of nineteen. The base offense level for conspiring to violate the munitions export laws was assessed at twenty-two. This level was reduced by three for failure to complete the substantive offense, § 2X1.1(b)(2), and two for acceptance of responsibility. § 3E1.1(a). Two points were added to each defendant for playing a managerial role in the offense. § 3B1.1(c). Since both Peters and Pullen had a criminal history category I, the resulting sentence range for both was thirty to thirty-seven months, plus two to three years supervised release and fines.

The district court accepted the government's § 5K1.1 motion regarding Peters and departed downward from the guidelines by sentencing him to twelve months confinement plus thirty-six months supervised release and the guideline minimum fine. The court rejected Pullen's suggestion that past military service and commendations justified a downward departure for him. Pullen was sentenced to the guideline minimum confinement of thirty months,

plus thirty-six months supervised release and the guideline minimum fine.

Both Peters and Pullen challenge the base offense level applied in their sentencing. They contend that under the Guideline provisions in force in the spring of 1990, the proper base offense level should be fourteen, not twenty-two. At that time the applicable section provided for a base offense level of "(1) 22, if sophisticated weaponry was involved; or (2) 14." § 2M5.2. The court found that the Model 204 helicopters were sophisticated weaponry. The defendants dispute the factual and legal bases of this finding.

The term sophisticated weaponry was not defined in the Guidelines, but its meaning was addressed by this court in United States v. Nissen, 928 F.2d 690 (5th Cir. 1991). We held that the 1990 amendment to § 2M5.2 may be considered in determining whether items should be considered sophisticated weaponry under the pre-amendment provision. Id. at 695. That amendment provided that the base offense level should be twenty-two, or fourteen if the offense involved only ten or fewer non-fully-automatic small arms. § 2M5.2 (as amended Nov. 1, 1990). In light of that clarification of § 2M5.2's intended meaning, we decided that "the lower base offense level [of pre-1990 § 2M5.2] is reserved for truly minor exports of military equipment." Nissen, 928 F.2d at 695.

The district court's factual determination that seven Model 204 helicopters are sophisticated weaponry is reviewed for clear error. See id. Peters and Pullen argue that these helicopters

were not sophisticated weaponry because they were civilian aircraft only potentially usable for military purposes. Unlike most civilian aircraft, these helicopters were made with reinforced structures permitting the attachment of military hardware. The United States Munitions List controls aircraft "specifically designed, modified, or equipped for military purposes." 22 C.F.R. § 121.1, Category VIII(a). The Model 204 fits that description. We are not persuaded that the district court's finding was clearly erroneous.

In making its determination, the district court referred to the clarification of § 2M5.2 by the 1990 amendment. Peters and Pullen argue that using the amendment to interpret the earlier provision amounted to an ex post facto application of the amendment. The Supreme Court has held that a criminal law is ex post facto if it is retrospective and disadvantages an offender by altering matters of substance. Miller v. Florida, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451 (1987). Defendants rely on United States v. Suarez, 911 F.2d 1016 (5th Cir. 1990), which held that an amendment to § 1B1.3 could not be retroactively applied because it substantially changed that provision. Id. at 1022. Two important distinctions exist between this case and Suarez. First, the question in Suarez was under which set of terms--pre-amendment or post-amendment--the defendant could be sentenced. Here, the district court sentenced both defendants under the terms of pre-amendment § 2M5.2 by determining whether or not sophisticated

5

weaponry was involved.[2]  Reference to the amendment was only made

in order to clarify the meaning of the pre-amendment section.

More importantly, we have already held that the 1990 amendment

to § 2M5.2 did not effect a substantive change to the provision.

> We view this amendment as making no substantive changes
> to either the guideline itself or to its commentary.
> Since it was intended only to clarify this guideline's
> application, we may consider the amended language, even
> though it was not effective at the time of sentencing for
> the offense in question.

Nissen, 928 at 694-95.  The district court permissibly followed the

lead of this court in looking to the non-substantive amendment to

interpret the governing provision.  No unconstitutional ex post

facto application of a substantive change increasing the

defendants' sentence occurred.

Defendants also complain of the offense level increase for

acting as "an organizer, leader, manager, or supervisor" in the

offense.  § 3B1.1(c).  Among the considerations suggested by

§ 3B1.1(c)'s commentary are planning, organizing, recruitment of

accomplices, and the scope of the illegal activity.  § 3B1.1,

comment. (n.3).  Peters and Pullen argue that their scheme was a

two-man conspiracy with neither one exercising a leadership or

managerial role over the other.  The pre-sentencing report

indicates that their scheme was more far-reaching and complicated

than their characterization admits.[3]  Defendants recruited the

---

[2]Had the defendants been improperly "sentenced under" post-amendment § 2M5.2, no question of sophisticated weaponry would have arisen.  The amendment did away with this element.

[3]The district court may rely upon information in the PSR which has some minimum indicium of reliability.  United States v.

informant's involvement and met with an undercover Customs agent. At least one other person attended a meeting as well. Peters represented himself as a broker in the transaction. Pullen identified himself as the representative of an unnamed foreign buyer. Defendants have failed to show that the district court clearly erred in finding that they were organizers of this criminal activity within the meaning of § 3B1.1(c).

Finally, Pullen complains of the district court's failure to grant a downward departure for his sentence. A claim that the court improperly failed to reduce a sentence will succeed only if the court's failure to depart violated the law. United States v. Mitchell, 964 F.2d 454, 462 (5th Cir. 1992). The district court departed for Peters after a § 5K1.1 motion and sentenced him to twelve months. Pullen argues that he should have been given a similar sentence because (1) his sentence should be comparable to Peters' sentence; (2) the government made the oral equivalent of a § 5K1.1 motion at sentencing; and (3) his military service and commendations warranted a downward departure. We disagree with each of these contentions.

The fact that another party received a lesser sentence for the same offense does not make a sentence within the guideline range improper. See United States v. Puma, 937 F.2d 151, 156 (5th Cir. 1991), cert. denied, 112 S. Ct. 1165 (1992). The district court was justified in giving Peters and Pullen different sentences

_____

Vela, 927 F.2d 197, 201 (5th Cir.), cert. denied, 112 S. Ct. 214 (1991).

7

because the government acknowledged that Peters' cooperation was substantial.  Courts give substantial weight to the government's evaluation of a defendant's assistance.  § 5K1.1, comment. (n.3). Peters promptly and completely disclosed his involvement to investigators, and convinced Pullen to plead guilty.  Pullen has failed to point to similar assistance to the government.

We do not agree that the prosecutor's statement at sentencing amounted to an oral § 5K1.1 motion.  He said:

> [B]ased on his cooperation with the government and the fact of our mistake in representation to him prior to [sentencing regarding the correct guideline calculation], as well as his distinguished military career, and the fact that he has no prior criminal record, we would ask that that will mitigate in terms of sentence.

The statement does not establish that Pullen had provided "substantial assistance" as § 5K1.1 requires.  Rather than requesting a downward departure from the guideline range, it apparently does no more than suggest leniency within that range. We find no violation of law in the district court's failure to depart on this basis.

We are not persuaded that Pullen's military service and receipt of two purple hearts and a distinguished flying cross compel a departure from the sentencing guidelines.  The primary focus of the sentencing guidelines is on the crime committed rather than on the individual offender.  See United States v. Reyes-Ruiz, 868 F.2d 698, 700 (5th Cir. 1989), overruled on other grounds by United States v. Bachinsky, 934 F.2d 1349 (5th Cir. 1991) (per curiam) (en banc).  The Guidelines discourage departing on the basis of a variety of individual characteristics including previous

8

employment record and community ties.  §§ 5H1.5, 5H1.6.  An individual's service to the community does not justify a departure from the Guidelines.  United States v. O'Brien, 950 F.2d 969, 971 (5th Cir. 1991), cert. denied, 61 U.S.L.W. 3233 (U.S. Oct. 5, 1992).  Without deciding, as some circuits have,[4] whether or not military service could ever justify a departure, we conclude that the facts of this case do not present such extraordinary circumstances as to require departure on the basis of this individual characteristic.[5]  The district court committed no violation of law in declining to depart downward from the guideline sentence range in Pullen's case.

AFFIRMED.

---

[4]See United States v. McCaleb, 908 F.2d 176, 179 (7th Cir. 1990)(holding that military service could justify departure); United States v. Neil, 903 F.2d 564, 566 (8th Cir. 1990)(accord). In neither McCaleb nor Neil, however, was a departure based on military service found warranted.

[5]Our confidence in this conclusion is bolstered by the fact, which we note but do not rely upon, that the Sentencing Commission amended the Guidelines to add military service to the list of ordinarily irrelevant considerations.  § 5H1.11 (as amended Nov. 1, 1991).