**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edward Duarte GARCIA,**
**Defendant–Appellant.**

**No. 89–5613**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 19, 1990.

Lucien B. Campbell, Federal Public Defender, John R. Carter, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Sol Wisenberg, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Edward Duarte Garcia was convicted on a guilty plea of theft of mail by a postal employee in violation of 18 U.S.C. § 1709. Garcia appeals his sentence, contending that the district court erred in departing upward from the applicable guideline range, and that the resulting sentence is unreasonable. We hold that the district court did not err in departing from the Guidelines, and that the sentence imposed by the district court is reasonable.

I

In January 1989, officials at the Nimitz Postal Station in San Antonio informed Postal Inspectors that customers had been complaining about not receiving mail. On February 6, 1989, a postal inspector noticed Garcia, who was a part-time Postal Service employee at the Nimitz Station, surreptitiously placing envelopes in a plastic bag. Garcia later placed the plastic bag inside a mail bag. He then hid the mail bag inside a mail hamper. After 7:00 p.m. that same day, Garcia was stopped by postal inspectors after he was observed retrieving the hidden bag and carrying it away from the station.

In a sworn statement, Garcia admitted to: (1) stealing mail from the Nimitz station since December 27, 1988; (2) stealing $250 from greeting cards on one occasion; and (3) disposing of damaged mail in a dumpster at a local bar. Inspectors recovered 248 first class letters from Garcia on the date of his arrest, 235 of which appeared to be greeting cards. Authorization was obtained to retain three letters. One of the letters contained a check for $1,555.62, and the other two contained a total of $15 in cash.

Six days after Garcia pled guilty, construction workers discovered approximately 700 more letters located underneath a furniture store near the Nimitz Station. The letters were in mailbags of the same type used by Garcia during the February 6 theft. All of the letters appeared to be greeting cards, all originated out of the Nimitz Postal Station, all were dated prior to February 6, 1989, and all had passed through Garcia's work location. The Postal Inspector attributed the theft of these letters to Garcia. According to the presentence report, the Postal Inspector stated that "in his nearly 20 years as a Postal Inspector, he had no knowledge of any case of this nature where a postal employee had stolen this volume of mail."

II

A federal grand jury returned an indictment against Garcia charging him with three counts of theft of mail by a postal employee in violation of 18 U.S.C. § 1709. Garcia pled guilty to Count One of the indictment pursuant to a plea bargain agreement. The government agreed to make no recommendation as to the sentence and to dismiss the remaining two counts of the indictment at sentencing.

The Probation Office determined that the guideline for violation of 18 U.S.C. § 1709 was Section 2B1.1. That section prescribes a base offense level of 4. Because the loss exceeded $100, Garcia's base offense level was increased two levels in accordance with § 2B1.1(b)(1), which specifies an increase of two levels if the loss is between $1,001 and $2,000. The determinable loss involved here totaled $1,820.62. That fig-

ure was arrived at by adding the retained check, the retained cash, and the $250 Garcia admitted to taking previously. Garcia's offense level was also increased two levels under § 2B1.1(b)(4) because his offense involved more than minimal planning. His offense level was then reduced by two levels under § 3E1.1 for acceptance of responsibility.

The above adjustments yielded a base offense level of 6. Because Garcia had a criminal history category of I, the Guidelines sentencing range was 0–6 months. The presentence report identified two factors warranting upward departure from the Guidelines: (1) property damage or loss to an extent not taken into account within the Guidelines, § 5K2.5; and (2) significant disruption of a critical governmental function on account of the theft of an unusually high quantity of first class letters, § 5K2.7.

Garcia objected to the probation officer's recommendations regarding factors warranting upward departure. The district court, however, agreed with the government and with the presentence report's recommendations and found aggravating circumstances "of a kind and to a degree" not adequately taken into consideration by the Sentencing Guidelines. The court in effect departed upward to a total offense level of ten, with an imprisonment range of six to twelve months, because the "unusually large volume of mail stolen by this defendant created property damage to an extent not taken into consideration by the guidelines." In addition, even though the court recognized that the disruption of a governmental function is inherent in the offense of theft of mail, the court also departed upward because the theft of mail caused significant disruption of a governmental function and "represented unusual circumstances not taken into account" by those formulating the Guidelines.

Garcia was sentenced to eight months imprisonment to be followed by three years of supervised release. Garcia appeals.

### III

■ The district court may depart from the applicable Guidelines sentencing range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). We will affirm a sentence based upon a departure from the Sentencing Guidelines if the district court provides acceptable reasons for its departure that conform to underlying Guidelines policies, and if the resulting sentence is reasonable. *E.g., United States v. Campbell,* 878 F.2d 164, 165 (5th Cir.1989); *United States v. Mejia–Orosco,* 867 F.2d 216 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

Garcia argues that the factors relied upon by the district court as the basis for its upward departure were adequately considered by the Sentencing Commission and are already reflected in the Guidelines.

### A

■ Section 5K2.5, entitled "Property Damage or Loss," states that "if the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the guideline range." The guideline applicable to the offense of theft of mail is § 2B1.1. The commentary to that section states that "[t]he value of property taken plays an important role in determining sentences for theft offenses." "Loss" is defined in the commentary as "the value of the property taken, damaged, or destroyed." Further, "[t]he loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation."

When the amount of loss is determined, and the amount exceeds $100, the amount of loss is used to increase the offense level according to a table in § 2B1.1(b)(1). If the offense level as determined in accordance with the loss table is less than level 6, and the offense involves the taking of undelivered United States mail, the offense level is increased to level 6 pursuant to § 2B1.1(b)(5).

The presentence report stated that the loss resulting from Garcia's conduct, in-

cluding the unrealized loss, was incapable of calculation and had not been taken into account in the Guidelines. At the sentencing hearing, Garcia's counsel argued that difficulty of ascertaining loss was not a legitimate basis for upward departure. The government responded that the court "would be unable to determine the property damage and loss" caused by Garcia's theft of mail and that the Guidelines did not "adequately address this type of a crime." The district court stated that it was "in agreement with the Government ... that ... [t]he unusually large volume of mail stolen by this defendant created property damage to an extent not taken into consideration by the guidelines."

Garcia contends that the Sentencing Commission's method for dealing with theft of mail demonstrates that it has adequately considered value in formulating the guidelines, and that, by requiring a determination of the amount of loss, the Sentencing Commission has also appropriately taken into consideration large thefts of mail. Garcia argues that the incalculability of the loss resulting from his offense did not involve a circumstance that the Sentencing Commission failed to adequately consider, but rather resulted from inaction on the part of the Postal Service. According to Garcia, the Postal Service should have inventoried the contents of the mail he took in order to determine its value. He further contends that, if the government could not prove value, it should have made the "best estimate possible." We disagree.

The commentary to § 2B1.1 states that "[t]he loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation." Under the facts and circumstances of this case, the district court was justified in finding that the loss involved here was not capable of determination. In his sworn statement, Garcia admitted to having stolen mail from the Nimitz Station since December 27, 1988. He further admitted that he had disposed of damaged mail in a dumpster at a bar. Under these circumstances, it would have been unreasonable and unduly burdensome to require the government to inventory the contents of the approximately 950 pieces of mail known to have been taken by Garcia. Moreover, there was no way for the government to calculate the losses involved in the prior thefts to which Garcia admitted, particularly with respect to the mail that he disposed of in the dumpster.

We therefore hold that upward departure on this basis was reasonable because the district court was justified in finding that the Guidelines do not adequately take into account the undetermined and incalculable losses or the extremely large volume of mail involved in this case.

B

The second basis for the district court's departure was the disruption of a governmental function. Garcia argues that disruption of a governmental function is inherent in the offense of theft of mail by a government employee and that the district court therefore erred in departing from the Guidelines on this basis.

Policy Statement § 5K2.7, entitled "Disruption of Government Function," states that "if the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected." Section 5K2.7 cautions against departure where interference with a governmental function is inherent in the offense because "the guidelines will reflect the appropriate punishment for such interference." Policy Statement § 5K2.0 provides that, "where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." That policy statement further states that, when the disruption of a governmental function is inherent in the offense, a "quite serious" disruption is required to justify departure.

The district court recognized that disruption of a governmental function is inherent in the theft of mail by a postal employee, but stated that "this Defendant's theft of mail represented an unusual circumstance not taken into account by these guidelines." Garcia contends that the evidence here does not support a conclusion that his conduct caused a serious disruption of the mail substantially in excess of that which is ordinarily involved in the offense of conviction. In support of his argument, he contends that the mail he was apprehended with was barely delayed, and that the mail later discovered and attributed to him was eventually delivered.

Garcia neglects to mention, however, his sworn statement in which he admitted to taking mail from the Nimitz Station since December 27, 1988, and in which he further admitted to disposing of damaged mail in a dumpster. Moreover, the Postal Inspector assigned to this case testified that Garcia's thefts constituted the largest volume of mail he had ever seen stolen by a postal employee in his twenty years of service. The "unusual circumstances" mentioned by the district court are specifically referred to in Guideline § 5K2.7 as a basis for an upward departure even when disruption of a governmental function is inherent in the offense. The postal inspector's statement, the large amount of mail involved in this offense, and the fact that some of the mail was discarded and never reached its intended destination, certainly are sufficient to constitute "unusual circumstances" warranting upward departure for serious disruption of a governmental function. We therefore hold that the district court did not err in departing upward on this basis.

### IV

Garcia contends that the district court unreasonably increased his base offense level, and that the sentence imposed by the district court was unreasonable. The district court increased Garcia's base offense level from level six, with a sentencing range of zero to six months, to level ten, with a sentencing range of six to twelve months. Garcia was sentenced to eight months. We hold that, in the light of the facts and circumstances involved in this case, it was reasonable for the district court to increase Garcia's offense level from six to ten to reflect factors not adequately taken into account by the Guidelines. We further hold that the eight-month sentence imposed by the district court was not unreasonable.

Because the district court adequately explained its departure from the Guidelines on the basis of factors that were not adequately accounted for in the Guidelines, and because the resulting sentence was reasonable, the sentence imposed by the district court in this case is

AFFIRMED.