**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patricia DAVIDSON, Defendant–Appellant.**

No. 92–7315.

United States Court of Appeals, Fifth Circuit.

Feb. 16, 1993.

Rehearing Denied March 31, 1993.

Thomas S. Borg, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, TX, for defendant-appellant.

James L. Powers, Kathy G. Snyder, Paula C. Offenhauser, James L. Turner, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX., for plaintiff-appellee.

Before REAVLEY, KING and WIENER, Circuit Judges.

KING, Circuit Judge:

Patricia Davidson appeals from the district court's decision to depart upward in imposing a sentence under the United States Sentencing Guidelines. Finding that any error in the district court's application of the Guidelines was harmless, we affirm.

## I.

In 1988, Patricia Davidson devised a scheme with her husband, Ronnie Davidson, and her brother, Ronald Coots, to por-

tray the accidental death of Ronnie Davidson in order to collect life insurance and pension benefits. Coots caused a sailboat to explode during a staged fishing excursion and falsely reported that Ronnie Davidson was killed during the explosion. As a result of the scheme, the Davidsons received a total of $799,247.46 in insurance and pension benefits from seven companies through the mail. After a mock funeral and five years of active concealment—including the assumption of a new identity by Ronnie Davidson and a remarriage to his wife under the assumed name—the elaborate scheme was finally exposed.

Federal authorities charged the Davidsons with four counts of mail fraud. Pursuant to a plea bargain, Ronnie Davidson pled guilty to the first two counts, which were pre-Guidelines offenses, in return for the Government's promise to drop the two remaining Guidelines counts. Mr. Davidson was sentenced to five years' imprisonment. Patricia Davidson pled guilty to all four counts of mail fraud in return for the Government's promise to recommend a two-level reduction in the two Guidelines counts. She received four concurrent twenty-three month terms of imprisonment.

Because this appeal concerns the district court's application of the Sentencing Guidelines, it is necessary to review the applicable provisions. Under the Guidelines, mail fraud is assigned a base offense level of six. *See* U.S.S.G. § 2F1.1(a) (1988) ("Fraud and Deceit"). This provision treats the specific amount of money defrauded as an "offense characteristic," which is Guidelines' parlance for an offense-specific aggravating sentencing factor. The degree of aggravation under § 2F1.1 depends upon the amount of money defrauded. In the instant case, based on the amount of loss—almost $800,000—the offense level was increased by eight. *Id.* § 2F1.1(b)(1)(I).

Section 2F1.1(b)(2) lists four additional "built-in" aggravating factors; any of these, if found, permitted the district court to increase the offense level by two additional levels. In Davidson's case, the district court found two factors present: i) "more than minimal planning" went into the crime, and ii) the scheme defrauded "more than one victim." However, the Guidelines' Application Notes state that "the enhancements available in § 2F1.1(b)(2) are alternative rather than cumulative, so that a court may not stack" multiple (b)(2) factors. *United States v. Khan*, 969 F.2d 218, 222 (6th Cir.1992) (citing Application Notes to § 2F1.1(b)(2)). Thus, the district court could only increase Davidson's total offense level by two levels, notwithstanding the existence of two separate § 2F1.1(b)(2) factors, which raised Davidson's offense level to sixteen. Pursuant to the Government's recommendation, the district court then decreased Davidson's offense level by two in view of her acceptance of responsibility, *see* U.S.S.G. § 3E1.1, thus bringing her offense level back down to fourteen.

The sentencing range under the Guidelines for an offense level of fourteen, when combined with Davidson's criminal history category of I, resulted in a recommended sentencing range of 15–21 months. *See* U.S.S.G., Sentencing Table. The district court decided that this range was inadequate for a number of reasons and, thus, departed upward to a sentence of 24 months.[1] The district court specifically articulated its reasons for departing upward as follows: 1) the "remarkably aggravated circumstance[ ] of the complexity [of the fraud]" and the "extensive and extraordinary planning and execution" involved; 2) the existence of multiple victims; 3) the large amount of money defrauded (almost $800,000);[2] and 4) that a recommended

---

1. Twenty-four months falls at the top end of the recommended range for an offense level of 15 and a criminal history category of I. The district court thus departed upward the equivalent of only one offense level.

2. In the Presentence Investigation Report (PSI), the probation officer stated that the 1992 amendments to § 2F1.1(b)(1) provided for a greater increase based on the amount of money involved in this case than the version of the Guidelines operative at the time of the offense.

range of 15 to 21 months did not have "fair equity with regard to this case," since Davidson's co-defendant received a much stiffer sentence. However, of the four factors, the record reveals that the court's *primary* reason for departing upward was the extensive planning and elaborate execution of the fraud.

## II.

On appeal, Davidson challenges the district court's upward departure on three main grounds. First, Davidson points out that the Sentencing Commission already considered three of the four aggravating factors noted by the judge—the large amount of money lost, the existence of multiple victims, and the extensive planning and meticulous execution of the scheme—in the express language of § 2F1.1(b). Davidson further contends that the district court's adoption of the PSI's explicit consideration of the 1992 version of § 2F1.1(b) violated the *Ex Post Facto* Clause. Finally, Davidson argues that the district court erred by departing upward in order to attempt to achieve sentencing "equity" between Davidson and her co-defendant.

A. The district court's consideration of aggravating factors already "built into" § 2F1.1(b) in departing upward

Davidson argues that the district court, in departing upward, improperly considered factors already taken into consideration by the U.S. Sentencing Commission in promulgating § 2F1.1. Specifically, she contends that § 2F1.1(b)(1) & (b)(2) already provide for adequate consideration of the excessive amount of money defrauded, the existence of multiple victims, and the fact that "more than minimal planning" was involved.

█ The district court recognized that its upward departure was duplicative of the aggravating factors "built-into" to

The probation officer considered this to be a reason to depart upward.

3. Such precise increments entirely remove a district court's discretion to depart upward based on the amount of loss when the amount falls within a particular increment.

§ 2F1.1(b), yet determined these aggravating factors were so excessive in Davidson's case that they were not sufficiently reflected by the Guidelines' recommended sentence. In *United States v. Garcia*, 900 F.2d 45 (5th Cir.1990), this court noted language in the Guidelines' policy statement applicable to upward departures that rely on aggravating factors already considered by the Guidelines: "[W]here the applicable guidelines, specific offense characteristics, and adjustments [already] take into consideration a factor listed in this part, *departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.*" *Id.* at 49 (emphasis added); *see also* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. However, when a district court determines that "built-in" aggravating circumstances are not adequately considered by the Guidelines in this fashion, our review is limited under the abuse-of-discretion standard. *See United States v. Huddleston*, 929 F.2d 1030, 1031 (5th Cir.1991).

█ The district court appears to have erred in departing upward based on the number of victims and the amount of money involved in the instant case. The amount of money—slightly under $800,-000—was well within the parameters established by the Sentencing Commission in § 2F1.1(b)(1); that section expressly deals with dollar amounts up to $5,000,000 and specifies the precise degree of enhancement for incremental amounts.[3] In Davidson's case, the large amount defrauded was, therefore, adequately considered by the Guidelines; the district court thus abused its discretion in *reconsidering* that aggravating factor in departing upward. Similarly, the number of victims in this case—seven insurance companies[4]—was not extraordinarily large and also seems to fall within the range contemplated by the

4. Section 2F1.1(b)(2) treats a business entity, such as an insurance company, as a single victim. § 2F1.1, Application Note 3.

Sentencing Commission in § 2F1.1(b)(2). Again, the district court abused its discretion.

■ We do not believe, however, that the district court abused its discretion in holding that a third § 2F1.1(b) aggravating factor—the extraordinary planning and meticulous execution involved in the fraudulent scheme in the instant case—was so extraordinary that the Guidelines did not adequately consider this "built-in" aggravating factor. In this regard, the district court's explanation seems to satisfy the requirement that the aggravating factor be "substantially in excess" of those generally found in mail fraud cases.[5]

B. *Ex Post Facto* problems?

■ Davidson contends the district court's consideration of the 1992 version of U.S.S.G. § 2F1.1(b) in departing upward violated the Constitution's *Ex Post Facto* Clause. In order for a criminal law to be *ex post facto*, it must apply to events occurring before its enactment and it must disadvantage the offender. *United States v. Suarez*, 911 F.2d 1016, 1021 (5th Cir.1990). In the instant case, the presentence investigation report (PSI) distinguished the 1992 Guidelines from the 1988 Guidelines in two significant ways. First, the PSI noted that an upward departure based on the existence of "several" (b)(2) factors is not ad-

dressed in the current Guidelines; second, it observed that the amended § 2F1.1(b)(1) increased the aggravation level when $799,-247—the amount at issue in the instant case—is defrauded. In both cases, the PSI recommended a departure upward, apparently at least in part in view of the post–1988 amendments.[6] The district court specifically adopted this portion of the PSI after hearing Davidson's arguments regarding the *Ex Post Facto* Clause. The Government responded that "[i]n Mrs. Davidson's case, she was subject to the 1988 version of the guideline manual."[7]

In *Suarez*, we specifically held that "an increase in sentence based on an amendment to the [G]uidelines effective after the offense was committed 'would be an obvious ... violation'" of the *Ex Post Facto* Clause. *Id.* at 1021 (citing *United States v. Woolford*, 896 F.2d 99, 102 n. 2 (5th Cir.1990) (dicta)). *Suarez* simply followed well-established Supreme Court authority regarding the *Ex Post Facto* Clause's application to sentencing statutes. *See, e.g., Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

We observe that the revised portion of § 2F1.1(b)(1)(I) of the 1992 Guidelines substantively changed the preceding version of the Guidelines by increasing the base offense level by two for offenses involving $799,247. The 1992 version also removed from § 2F1.1(b)'s Application Notes the

---

5. The phrase "more than minimal planning" is defined in the Guidelines as "more planning than is typical for commission of the offense in a simple form." It also "exists if significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1, comment. n.1(f). In this case, the scheme was carefully organized and executed, and so well concealed that the parties evaded criminal prosecution for five years. After a mock funeral, the Davidsons developed a new identity for Ronnie Davidson and remarried under the assumed name; their scheme survived several law enforcement and insurance investigators; and Mrs. Davidson was involved in two court actions in addition to probate proceedings based on the fraudulent death. It is also noteworthy that all of the defrauded money was spent by the time the scheme was exposed.

6. The PSI stated that information provided about § 2F1.1(b)'s enhanced offense level for fraud involving $799,247 was "presented for the

Court's review as an aggravating circumstance not adequately taken into consideration by the United States Sentencing Commission in formulating the applicable [1988] guideline."

7. The probation officer who prepared the PSI appeared at the sentencing hearing and explained her mention of the 1992 version of the Guidelines in the PSI. She first stated that she simply mentioned the amendment of § 2F1.1's Application Notes, which removed the requirement of "several" § 2F1.1(b)(2) factors before a departure upward is warranted, without intending for it to justify a departure upward in Davidson's case. The probation officer also denied that the 1992 version of § 2F1.1(b)(1) was used to calculate Davidson's offense level based on the amount of loss; however, the probation officer did not reveal whether she considered it proper to depart upward based on the 1992 version of § 2F1.1(b)(1). The prosecutor approved of the probation officer's explanation and the district court accepted it.

limiting language about the need to establish "several" (b)(2) aggravating factors before an upward departure would be warranted. Although it was resolved at Davidson's sentencing hearing that the amendment to the Application Notes was not considered as a reason to depart upward, the probation officer apparently did consider the amendment to § 2F1.1(b)(1)'s mechanism for calculating an offense level based on the amount of loss as a justification for imposing a harsher sentence on Davidson. Because the district court specifically adopted the PSI, we must presume that the district court also relied on the 1992 version.

■ Citing *United States v. Bachynsky*, 949 F.2d 722, 735 (5th Cir.1991), the Government claims that the district court merely used the amended version of § 2F1.1(b)(1)(I) as a "yardstick" and did not feel bound by it; therefore, the Government argues, there was no violation of the *Ex Post Facto* Clause. The Government's reliance on *Bachynsky* is misplaced. In that case, the district court considered the amendment to § 2F1.1(b)(1) that permitted the offense level of a fraud crime to be raised for incremental amounts above $5 million, which had been the maximum increment under the prior version. The district court relied on the amendment because the amount of loss in that case, which occurred prior to the amendment, exceeded $5 million and the commentary to the unamended version of the Guidelines expressly permitted an upward departure if more than $5 million was at issue. Thus, the district court in *Bachynsky* simply used the amendment to guide its permitted discretion to depart upward. In the instant case, the district court appeared to ignore the applicable pre-amendment provisions, which did not permit a departure upward if only $799,247 was defrauded; instead, the district court, relying on the PSI, appeared to find justification for departing upward in part by looking to the subsequently amended version of § 2F1.1(b)(1)(I). The district court's reliance on the 1992 Guidelines was, therefore, a violation of the *Ex Post Facto* Clause.

C. The district court's statements regarding sentencing "equity" between Davidson and her codefendant

■ During the sentencing hearing, the district court stated, "[t]he Court does not feel that the guideline range of 15 to 21 months in this case has fair equity with regard to this case." Furthermore, the court's written judgment listed, as one factor justifying the upward departure, that "fair equity" would not have otherwise been afforded to Davidson's co-defendant, who received a considerably stiffer sentence.[8] The Government asserts that Davidson's failure at the sentencing hearing to object to the district court's decision to depart upward in order to provide sentencing parity limits appellate review to the plain error standard. At the sentencing hearing, it was unclear whether the district court's cryptic mention of "fair equity" gave Davidson's counsel fair notice that the court was departing upward in part based on a notion of parity among co-defendants. It was not until the court's *post hoc* written judgment that the court's reasoning became apparent. Therefore, Davidson's failure to object at the sentencing hearing does not constitute procedural default.[9]

■ Whether a district court may depart from a recommended Guidelines sentence solely to harmonize sentences of codefend-

---

**8.** Mrs. Davidson and her husband, the co-defendant, were sentenced in the same hearing. Ronnie Davidson received a five-year, pre-Guidelines sentence, which obviously exceeded his wife's recommended Guideline's sentence of 17–21 months.

**9.** In a supplemental brief filed with the court, the Government argues that under the law of this circuit, a court's *oral* pronouncements at the sentencing hearing trump the court's *written* reasons for sentencing as it did. *See United States v. Shaw*, 920 F.2d 1225, 1231 (5th Cir.

1991). Thus, the Government argues, we should ignore the district court's explicit written statements and only look to the court's cryptic oral statement about "equity." True, that statement—when viewed in isolation—did not unequivocally evince an intent on the part of the district court to depart upward so as to equalize the co-defendants' sentences. However, while we agree with the general statement of law advanced by the Government, we disagree with the Government's attempt to apply it in this case. When it is obvious that an unequivocal

ants was decided by this court in *United States v. Ives,* 984 F.2d 649 (5th Cir.1993), rendered on this very day. In *Ives,* we fell in line with the majority of other circuits and held that under no circumstances could a district court depart upward or downward in order to achieve sentencing equity between co-defendants. Thus, the district court erred in referring to any sentencing inequities between Davidson and her co-defendant as a reason for departing upward.

### III.

██ Even though three of the four aggravating factors cited by the district court as grounds for departing upward were invalid,[10] there still remains the question of whether this court should nevertheless affirm in view of the one valid factor cited by the district court. A similar issue was recently addressed by the Supreme Court in *United States v. Williams,* —— U.S. ——, ——–——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992). The Court held that remand for resentencing is proper in a case where the district court relied on both valid and invalid aggravating factors in departing upward unless an appellate court may say with confidence that even without considering the invalid factors the district court would have imposed the same sentence. *See also United States v. Corley,* 978 F.2d 185 (5th Cir.1992) (discussing *Williams'* harmless error standard).

██ Although three out of the four aggravating factors relied on by the district court appear to have been invalid, we nevertheless believe that the district court would have departed upward as it did even if it only had considered the one valid factor. This conclusion is based on the district court's repeated statements noting the complexity in planning and the carefulness in execution of the Davidsons' fraudulent scheme. This aggravating factor appeared to be the district court's primary consideration in departing upward. The other three factors were, thus, superfluous to the court's decision to depart upward. Finally, our confidence that the district court, upon remand, would depart upward precisely as it originally did is supported by the fact that the court only departed upward by a mere three months.[11]

### IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

statement in the written judgment refers to the same impermissible rationale for departing upward made in a prior ambiguous oral statement, we refuse to apply the rule in *Shaw.*

**10.** We note that the district court's apparent *ex post facto* consideration of the 1992 version of § 2F1.1(b)(1)(I) only applied to the amount of money defrauded. Thus, while this constituted a misapplication of the Guidelines distinct from the district court's misapplication discussed in *supra* Part II.A., it nevertheless only related to one of the two invalid factors discussed in *supra* Part II.A.

**11.** We note that in at least one case involving a retroactive application of a criminal sentencing statute, a court held that the constitutional violation was not subject to harmless error analysis. *See Coleman v. McCormick,* 874 F.2d 1280, 1289 (9th Cir.1989) (en banc) (analyzing retroactive application under due process clause rather than *Ex Post Facto* clause). *Williams,* of course, requires appellate courts in Guidelines cases to apply the equivalent of a harmless error

analysis when a district court has relied on both valid and invalid aggravating factors in departing upward. We believe, however, that *Coleman* is distinguishable from the instant case.

In *Coleman,* the law applied *ex post facto* was one that entirely altered capital sentencing procedures in Montana. The Ninth Circuit held that "[t]his due process violation had a pervasive effect" on the entire trial and, for that reason, was not subject to harmless error analysis. *Coleman,* 874 F.2d at 1289. As the Ninth Circuit correctly held, the Supreme Court has held that harmless error analysis is appropriately applied in appellate review of any constitutional violation where a "'reviewing court *can make an intelligent judgment* about whether'" a constitutional violation was in fact harmless beyond a reasonable doubt. *Id.* (quoting *Satterwhite v. Texas,* 486 U.S. 249, 258, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988)). Because we can make an intelligent judgment that the district court would have sentenced Davidson in the same manner but for its apparent erroneously consideration of the 1992 version of Guidelines, we believe that harmless error analysis is appropriate.