**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patricia Ann KAY, Defendant–Appellant.**

No. 95–30289.

United States Court of Appeals,
Fifth Circuit.

April 30, 1996.

Josette Louise Cassiere, Assistant U.S. Attorney, Office of the United States Attorney, Shreveport, LA, for United States of America, plaintiff-appellee.

Wayne Joseph Blanchard, Rebecca L. Hudsmith, Office of the Federal Public Defender, Lafayette, LA, for Patricia Ann Kay, defendant-appellant.

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

POLITZ, Chief Judge:

Patricia Ann Kay appeals her sentence after pleading guilty to bank fraud under 18 U.S.C. § 1344. Concluding that the trial court's upward departure did not result from an erroneous application of the Sentencing Guidelines and that the sentence imposed is reasonable, we affirm.

*Background*

In the early 1980s Kay contracted with Frank and Jeanne Ingraham to perform various accounting and bookkeeping functions. Kay's mother is the Ingrahams' longtime

trusted office manager. In 1992 Jeanne Ingraham formed a corporation, TeJeanne, Inc., to hold and manage her personal assets, including her interest in a trust. From approximately June 1992 through April 1993, Kay engaged in a scheme to defraud Cameron State Bank (CSB), National Bank of Commerce (NBC), and Calcasieu Marine National Bank (CMNB). She made fraudulent representations in establishing a checking account at CMNB entitled "TeJeanne, Inc. Investment Account," in which she deposited approximately $180,000 embezzled from TeJeanne, Inc. and other Ingraham accounts at NBC and CSB, including accounts for the minor Ingraham children. About $70,000 of this sum was replaced. Kay wrote numerous checks on the TeJeanne investment account, depositing the proceeds into her own personal and business accounts. Funds were carefully routed to conceal the criminal activity. She embezzled by forging the signature of her mother, the only person other than the Ingrahams authorized to draw on TeJeanne, Inc.'s legitimate bank account. It was not until Kay's manipulations brought an Ingraham account within a whisper of being overdrawn that the financial house of cards collapsed, exposing Kay. Ultimately she waived indictment and pleaded guilty to one charge of bank fraud.

The Pre–Sentence Report resulted in an offense level of 13, calculated by taking a base level of six for the offense of conviction and increasing it seven levels for an estimated loss of $125,938 plus two levels for more than minimal planning, and then decreasing two levels for acceptance of responsibility. An offense level of 13 and a criminal history category of I results in the Sentencing Guidelines range of 12–18 months. The district court departed upward seven levels and sentenced Kay to three years imprisonment, five years of supervised release, and $110,000 in restitution to the Ingrahams and the banks. The trial court observed, in summarizing its reasons for upward departure:

(1) The amount of economic loss alone underestimates the seriousness of the de-

fendant's conduct considering the horrendous abuse of various trusts involved in this case; and

(2) The intricacies of this scheme were not adequately considered by the Guidelines in the assessment of two points for more than minimal planning.

The district court concluded that it could depart upward when the guidelines do not adequately consider the seriousness of the matter. The court found that Kay went "far beyond the 'minimal planning' contemplated by the Guidelines by involving three different banks with multiple transactions."

The district court also focused on the fact that in the Pre–Sentence Report Kay's offense level had not been adjusted upward for abuse of a position of trust. The court found that her conduct exceeded that which the Sentencing Commission contemplated when it provided a two-level adjustment for such abuse. Kay's actions abused not only her own position of trust but also flagrantly abused the position of trust earned and enjoyed by her mother. The trial court also underscored that Kay had depleted trust accounts belonging to the Ingrahams' minor children. Taken all together, the trial court found that this mise-en-scene reflected "a callous disregard of the trust of others to an extent sufficient to warrant an upward departure."

### Analysis

The Sentencing Reform Act of 1984[1] permits a departure from the sentencing range as computed under the Sentencing Guidelines only in certain limited circumstances. A court may depart only when it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."[2]

■ In *Williams v. United States,*[3] the Supreme Court determined the scope of ap-

**1.** 18 U.S.C. § 3551 *et seq.;* 28 U.S.C. §§ 991–998.

**2.** 18 U.S.C. § 3553(b); *United States v. Lambert,* 984 F.2d 658 (5th Cir.1993) (en banc).

**3.** 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

pellate review of a trial court's departure from the Sentencing Guidelines.[4] We are to conduct two separate inquiries. We first must determine whether the sentence was imposed either in violation of law or as a result of an incorrect application of the guidelines.[5] Consideration of an erroneous factor in sentencing constitutes an incorrect application of the guidelines. If we find that an invalid factor was considered, we must determine whether the sentence as given was "the result of" that consideration. If the party challenging the sentence on appeal carries the burden of showing that the district court relied upon an invalid factor at sentencing, remand is appropriate unless the reviewing court is persuaded that the error was harmless, i.e., that the district court would have imposed the same sentence absent the erroneous factor.[6]

Were we to conclude that the challenged departure is not the result of an error in interpreting the guidelines, the second inquiry requires that we determine whether the sentence is an unreasonable departure from the computed guideline range. That determination depends on the extent of the departure, giving consideration to the factors used in the guideline computation, and the assigned reasons for the imposition of the particular sentence.[7] A sentence may be found to be reasonable even though one or more of the reasons assigned in justification of the departure be deemed invalid, provided that the remaining reasons suffice to justify the departure.[8]

In reviewing the sentence, we accept the factual findings of the district court unless clearly erroneous, but we review *de novo*

the application of the guidelines for possible errors of law.[9] In doing so, we extend due deference to the district court's application of the guidelines to the facts as found.[10]

Kay challenges the district court's upward departure on three grounds. We consider each in turn.

### Intricacy and Repetitiveness of Scheme

Kay contends that the intricacy of her scheme did not justify an upward departure. The trial court increased the offense total by two levels for "more than minimal planning," a factor defined as "more planning than is typical for commission of the offense in a simple form" or "if significant affirmative steps were taken to conceal the offense."[11] In an embezzlement case, "a single taking accomplished by a false book entry would constitute only minimal planning," but "several instances of taking money, each accompanied by false entries, would constitute more than minimal planning."[12]

Aggravating factors considered by the guidelines may justify an upward departure under certain circumstances.[13] Where the applicable guidelines, specific offense characteristics, and adjustments take into consideration a certain factor, a departure based thereon is "warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction."[14] When a district court concludes that the aggravating circumstances in a particular case were not adequately considered by the guidelines, we

4. *See United States v. Caldwell,* 985 F.2d 763 (5th Cir.1993).

5. *Williams.*

6. *Id.;* 18 U.S.C. § 3742(f)(1).

7. *Williams;* 18 U.S.C. § 3742(f)(2), 3742(e).

8. *Williams.*

9. *United States v. Lara,* 975 F.2d 1120 (5th Cir. 1992); 18 U.S.C. § 3742(e).

10. *United States v. Box,* 50 F.3d 345 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 309, 133 L.Ed.2d 213 (1995); 18 U.S.C. § 3742(e).

11. U.S.S.G. § 2F1.1(b)(2)(A), § 2F1.1(n.2), § 1B1.1(n.1(f)).

12. U.S.S.G. § 1B1.1(n.1(f)).

13. *United States v. Garcia,* 900 F.2d 45 (5th Cir. 1990).

14. U.S.S.G. § 5K2.0 (policy statement); *Garcia.*

review under the abuse of discretion standard.[15]

In *United States v. Davidson*,[16] we held that the "extraordinary planning and meticulous execution" by a defendant who devised an insurance fraud scheme which staged the fake accidental death of her husband was not adequately taken into consideration by the Sentencing Guidelines' enhancement for "more than minimal planning." Although Kay's scheme is less complex than that in *Davidson*, her scenario was very intricate, elaborate, ongoing, and repetitive. The district court found that Kay went "far beyond the 'minimal planning' enhancement contemplated by the Guidelines by involving three different banks with multiple transactions." The offense involved multiple acts of forgery, fraudulent representations to set up an unauthorized account to route the embezzled funds, repeated acts of embezzlement from various accounts, the transfers of embezzled funds into several accounts belonging to Kay or her alter egos at different banks, and the skillful shifting of funds among the accounts to conceal the dastardly embezzlement. We agree with the trial judge that the repetitiveness, intricacy, and sophistication of Kay's scheme were substantially in excess of that which ordinarily is involved in the crime of bank fraud, and that this level of malfeasance was not accounted for adequately by the "more than minimal planning" adjustment. We therefore conclude that this factor is valid and reliance thereon for the upward departure at bar does not constitute a misapplication of the guidelines.

### Abuse of Positions of Trust

Kay challenges the district court's finding that she so abused a position of trust as to warrant an upward departure. Section 3B1.3 of the guidelines provides for a two-level increase in the offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission

or concealment of the offense." Such a position is characterized by "substantial discretionary judgment that is ordinarily given considerable deference." The position of trust "must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." [17] A special skill is one "not possessed by members of the general public and usually requiring substantial education, training or licensing." [18] An accountant is a prime example of a person with a special skill.

The challenged departure was based in part on a finding that Kay had abused a position of trust and that the Pre–Sentence Report had not given adequate consideration to this factor. Kay contends that she did not hold a position of trust within the meaning of section 3B1.3 because she was not a signatory on the Ingraham accounts. Rather, she maintains that she merely was a contract laborer, performing minor functions such as preparation of quarterly tax statements and making computer input of accounting data. On close examination it is apparent, however, that Kay was in a special position to facilitate the commission and concealment of her offense, and that she abused that position for her illegitimate purposes. She had access to the Ingrahams' private banking records and, because of her accounting and related skills, was able to transfer funds from bank to bank without detection. The district court's application of section 3B1.3 for abuse of her position of trust was neither in error nor inappropriate. The court likewise was justified in a further departure based on Kay's abuse of trust because in the case at bar the true insidiousness of this breach was not adequately assayed by section 3B1.3 in light of the fact that Kay also abused and tainted her mother's position of trust. The reach and scope of the trust for her mother, a loyal senior Ingraham employee, is best exemplified by her envious position as a signatory on the Ingrahams' bank accounts.

15. *United States v. Davidson,* 984 F.2d 651 (5th Cir.1993).

16. *Id.* at 655.

17. U.S.S.G. § 3B1.3(n.1).

18. Id. (n.2).

The district court obviously also considered Kay's raids on the trust funds of the minor children. The court could have adjusted Kay's offense level upward by two levels because of her awareness of the vulnerability of the minor children [19] but, instead, factored this data into its basis for the upward departure.

### Citation to U.S.S.G. § 2F1.1(n.7(b))

 The district court cited U.S.S.G. § 2F1.1(n.7(b)) for the proposition that when the determination of economic loss underestimates the seriousness of the defendant's conduct an upward departure may be appropriate. Note 7(b) specifically refers, however, to "Fraudulent Loan Application and Contract Procurement Cases." This, of course, is not the conduct comprising Kay's offense. Kay insists that this erroneous citation constitutes an incorrect application of the guidelines undermining the validity of her sentence.

We are not persuaded. Kay is correct in observing that note 7(b) was not applicable to her conduct. The district court stated, however, that it was not relying on any of the factors listed in note 7(b) for justification for departure in this case; it merely cited note 7(b) as support for the concept of departing upward rather than as a predicate for the instant departure. The factors cited by the district court as justification for its departure were: abuse of positions of trust, the degree of repetitiveness and intricacy of the scheme, and the vulnerability of the child victims, all of which manifestly are pertinent to Kay's offense. We pause to observe that even if the district court's citation to an inapposite legal authority were to constitute an incorrect application of the guidelines, that reference would be harmless error herein. Accepting at face value the court's statement that it was not relying on any of the factors listed in note 7(b), we must conclude that its sentence obviously was not "the result of" those factors. Accordingly, we entertain no doubt that the district court would have im-

posed the same sentence with or without its reference to note 7(b).

### Reasonableness of Extent of Departure

Finally, we briefly consider the second inquiry required by *Williams:* Is the sentence imposed the product of an unreasonable departure? The 36–month sentence is double the high side as computed in the Pre–Sentence Report, based on its analysis of relevant factors. In light of the foregoing discussion, however, and giving due consideration to all relevant factors and law applicable to the sentencing function in this case, we are persuaded that the challenged departure is not unreasonable.

The sentence is AFFIRMED.

---

**19.** U.S.S.G. § 3A1.1(b) (two-level increase if the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or otherwise).