IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20665
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

ALAN WHITELAW,

                                        Defendant-Appellant.
_____

        Appeal from the United States District Court for the
                Southern District of Texas, Houston
                    USDC No. H-98-CR-450-1
_____
                       December 21, 2000
Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM[**]:

    Alan Whitelaw appeals his conviction and sentence for various

federal criminal offenses related to a check counterfeiting scheme.

At a pretrial hearing, Whitelaw urged the district court to

suppress 84 incriminating tape recordings of conversations between

Whitelaw and John Irwin, a government informant.  Whitelaw contends

that the government's actions violated his rights under the Fifth

and Sixth Amendments.  When the district court denied his motion to

_____

        [*]Judge, U.S. Court of International Trade, sitting by
designation.

        [**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

suppress, Whitelaw entered a conditional guilty plea.  Whitelaw also appeals the length of his sentence, arguing that the district court miscalculated the amount of loss attributable to him and that the amount of loss was an essential element of the offense and should have been proved beyond a reasonable doubt.  Finding no error by the district court, we affirm the conviction and sentence.

I

Alan Whitelaw was involved in a check counterfeiting operation.  According to the district court, Whitelaw typically would open a bank account using an alias, then deposit stolen or forged checks into the new account, and withdraw funds from the new account before the theft was detected.  Whitelaw's activities led to both state and federal criminal charges.

Whitelaw was indicted on state charges in June 1998.  The indictment alleged that between October 6, 1996 and November 14, 1996, Whitelaw committed the offense of theft of money in an amount exceeding $200,000.  He was tried and convicted on July 16, 1998, and was sentenced to 60 years in the Texas Department of Criminal Justice.

While Whitelaw was in custody on the state charges, he arranged additional fraudulent transactions. From July 2, 1998 to September 5, 1998, Whitelaw made numerous telephone calls to John Irwin, who had been involved with Whitelaw's other schemes.

Unknown to Whitelaw, Irwin had become a government informant[1] and had agreed to record his telephone conversations with Whitelaw. Because the Harris County, Texas prison does not accept incoming calls to prisoners, all conversations were initiated by Whitelaw.

Whitelaw was indicted by a federal grand jury in November 1998. The federal indictment alleged bank fraud, possession of counterfeit securities, and conspiracy. Whitelaw filed a motion to suppress the recorded conversations on the grounds that the government had violated his Sixth Amendment right to counsel, his Fifth Amendment privilege against self-incrimination, and his Fifth Amendment right to due process. After a suppression hearing, the district court denied his motion. Whitelaw then entered a conditional plea of guilty to one count of aiding and abetting bank fraud. In return, the government agreed to dismiss the remaining counts. The plea agreement expressly allows Whitelaw to appeal the court's denial of the motion to suppress as well as any sentencing issues.

The Pre-Sentencing Report determined that the guideline range of imprisonment was 46 to 57 months. This determination was based, in part, on the assumption that Whitelaw's criminal history category was "III" and that Whitelaw was accountable for an intended loss of $1,188,618. Whitelaw filed objections to the PSR. At sentencing, the district court sustained Whitelaw's objection to

---

[1]Irwin entered into agreements with agents from both federal and state governments.

the criminal history category and reduced it to "I". However, the court denied Whitelaw's challenge to the calculation of attributable intended loss. With a revised guideline range of 37 to 46 months, the district court sentenced Whitelaw to 46 months' imprisonment, to run concurrently with his state sentence.

Whitelaw filed a timely notice of appeal, challenging the district court's decisions as to the motion to suppress and to the intended loss calculation during sentencing. Whitelaw has also raised an objection to his sentence based upon the Supreme Court's recent decision in Apprendi v. New Jersey. According to Whitelaw, the amount of loss was an essential element of the offense and should have been proved beyond a reasonable doubt.

II

We turn now to Whitelaw's motion to suppress the recorded conversations. In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and accept the court's findings of fact unless they are clearly erroneous. See United States v. Castro, 166 F.3d 728, 731-33 (5th Cir. 1999) (en banc); United States v. Muniz-Melchor, 894 F.2d 1430, 1433-34 (5th Cir. 1990).

Whitelaw presents three arguments for suppressing his recorded conversations with Irwin, the government informant. Whitelaw argues that the government's act of recording these conversations violates his Sixth Amendment right to assistance of counsel, his

4

Fifth Amendment privilege against self-incrimination, and his Fifth Amendment right to due process.  We address each argument in turn.

A

(1)

The Sixth Amendment right to counsel attaches only when the government initiates adversarial criminal proceedings.  United States v. Laury, 49 F.3d 145, 150 (5th Cir. 1995).  Once proceedings have been initiated, law enforcement officials may not confront the accused or elicit incriminating information regarding the charged offenses without counsel being present.  Maine v. Moulton, 474 U.S. 159, 176 (1985).  It must be emphasized, however, that the Sixth Amendment is offense-specific; that is, the right to counsel applies only "to the specific offense with which the suspect has been charged."  United States v. Carpenter, 963 F.2d 736, 739 (5th Cir. 1992).  Consequently, if a criminal defendant makes incriminating statements pertaining to some other offense to which the Sixth Amendment has not yet attached, then those statements are admissible at a trial for that offense.  Moulton, 474 U.S. at 180 & n.16 ("[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.").

This circuit has carved out a narrow exception to the general rule: "If the charged and uncharged offenses are 'so inextricably intertwined' or 'extremely closely related,' then the Sixth Amendment . . . prohibits interrogation about the uncharged offense." Carpenter, 963 F.2d at 740; see also United States v. Cooper, 949 F.2d 737, 743-44 (5th Cir. 1991). To determine whether criminal offenses are sufficiently intertwined, this circuit focuses on the specific facts underlying the charged and uncharged offenses. As this court recently explained, the relevant question is "whether the conduct leading to each offense is the same." United States v. Walker, 148 F.3d 518, 529-30 (5th Cir. 1998) (holding that firearms possession and subornation of perjury are not inextricably intertwined charges because they were "distinctly separate offenses . . . [that] did not occur within a close temporal proximity"). The rule in this circuit is accurately stated as follows: The right to counsel carries over "only where the new charge arises from the same acts and factual predicates on which the pending charges were based. In determining whether the same acts and factual predicates underlie both the pending and the new charges, courts have looked for similarities of time, place, person and conduct." United States v. Arnold, 106 F.3d 37, 41 (3d Cir. 1997) (citing Carpenter, 963 F.2d at 740-41); see also Laury, 49 F.3d at 149-50; United States v. Williams, 993 F.2d 451, 456-57 (5th Cir. 1993); Cooper, 949 F.2d at 743-44.

6

If a court finds that two charges are inextricably intertwined and, consequently, that the invocation of the Sixth Amendment right on the pending charge is sufficient to invoke the right on the subsequent charge, the court must then determine whether the government's actions violated the defendant's right to counsel. It is well established that the government may not circumvent the Sixth Amendment right to counsel by having an informant deliberately elicit and record incriminating conversations with a suspect. See Moulton, 474 U.S. at 162; United States v. Henry, 447 U.S. 264, 265-68 (1980); Massiah v. United States, 377 U.S. 201, 202-03 (1964).

(2)

In the present case, federal proceedings had not been initiated against Whitelaw at the time Irwin recorded their telephone conversations. Therefore, Whitelaw's Sixth Amendment right to counsel had not yet attached to the federal charges unless those federal charges were "inextricably intertwined" with or "extremely closely related" to the pending state charges.

The district court concluded that the federal and state charges were not so intertwined or closely related as to invoke the right to counsel for the federal charges. The court reasoned as follows:

> While Whitelaw may have employed the same method or modus operandi for defrauding the federal victims as he did when he defrauded the state victims, he has not been charged in the federal indictment for the same criminal conduct alleged and proven at the state trial. As is

7

apparent from the state and federal indictments . . . , the criminal conduct charged in the federal indictment was not charged or prosecuted in any of Whitelaw's previous state indictments, particularly the indictment which ultimately led to his conviction. The conspiracy charge in the federal indictment does not rely on or even mention any of the criminal events covered by Whitelaw's state trial as acts in furtherance of the criminal conspiracy. The bank fraud and possession of counterfeit securities charges allege difference victims, events, dates, and amounts stolen than those covered in Whitelaw's state case.

Our review of the law confirms that the district court clearly understood and applied the proper standard by focusing on the specific underlying conduct, the time frame for the criminal offenses, and the identity of the perpetrators and victims. Our review of the record also confirms that the factual bases of the district court's conclusion are sound.

Whitelaw does not argue that the district court erred in finding that the charges involved different acts, done at different times, in different places, with different perpetrators and victims, and with different amounts stolen. Rather, he suggests obliquely that the district court misconstrued the law. The relevant issue, Whitelaw insists, is the "type of conduct" underlying the charges. Viewed in this light, the acts underlying the federal charges are part of a larger "ongoing scheme" of fraudulent activities. He argues that the

alleged conduct is the same: steal a valid check or account number, counterfeit a check, open an account, deposit the counterfeit or stolen check, place the proceeds into other accounts . . . , then proceed back to step one. This is the scheme or relevant conduct in both the state and federal case.

8

Whitelaw's argument is based on a fundamental misreading of one sentence in the Walker opinion.

As we explained above, the court in Walker insisted that the correct question in this type of case is "whether the conduct leading to each offense is the same." Walker, 148 F.3d at 529. The court then observed in passing that subornation of perjury and possession of a firearm are "two distinct types of conduct, the one not leading necessarily to the other." Id. We do not question Walker's premise that two criminal charges are less likely to be "inextricably intertwined" if they involve different "types of conduct." But nothing in the Walker court's opinion suggests that the general type of conduct involved (such as check counterfeiting, for example) should be the primary factor in the analysis. To the contrary, the Walker opinion places itself squarely within the framework established in earlier cases. The Walker court, therefore, relies heavily on two other considerations: The two criminal charges were "distinctly separate offenses," which means that they involved different underlying facts; and the two offenses "did not occur in a close temporal proximity." Id. At most, Walker throws additional light upon one factor--the general type of activity involved--but it surely cannot be read to supersede or overrule prior decisions addressing this issue of whether criminal offenses are "inextricably intertwined" for the purposes of the Sixth Amendment right to counsel.

(4)

For the reasons outlined above, we reject Whitelaw's contentions and adopt the reasoning of the district court. As the district court explained, the criminal charges are not "inextricably intertwined" because the specific conduct, victims, and time frame are all very different. It is true, of course, that both crimes involve the same type of fraudulent conduct (a check-counterfeiting scheme). While the type of conduct is relevant to the analysis, the fact that the criminal activities are similar in nature cannot, by itself, establish that the charges are intertwined.[2]

B

As an alternative ground for suppressing the tape-recorded statements, Whitelaw argues that the government's conduct violated his Fifth Amendment privilege against self-incrimination under Miranda v. Arizona, 384 U.S. 436 (1966).

The Supreme Court held in Illinois v. Perkins, 496 U.S. 292, 294 (1990), that "Miranda warnings are not required when the suspect is unaware that he is speaking to a law enforcement officer and gives a voluntary statement." The Court explained that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying Miranda. The essential

_____

[2]Because we hold that Whitelaw's right to counsel had not attached to the federal charges, we do not reach the other question addressed by the district court, namely, whether Irwin deliberately elicited Whitelaw's incriminating statments and thereby caused the government to violate the Sixth Amendment right to counsel.

10

ingredients of a 'police-dominated atmosphere' and compulsion are not present" in such cases.  Id. at 296.

Whitelaw has not presented any evidence suggesting that his conversations with Irwin were coerced.  To the contrary, Whitelaw spoke voluntarily with Irwin and, in fact, initiated every telephone conversation.  For these reasons, Whitelaw's Miranda argument fails.

C

As a third ground for suppressing the tape-recorded conversations, Whitelaw argues that his Fifth Amendment right to due process has been violated.

This question was not addressed by the district court.  In his briefs, Whitelaw's only legal authority is Justice Brennan's concurring opinion in Illinois v. Perkins, 496 U.S. at 300-03.  In Justice Brennan's view, when the government obtains incriminating information from suspects in custody, the government's actions are arguably incompatible with a system "'that presumes innocence and assured that a conviction will not be secured by inquisitorial means.'" Id. at 303 (Brennan, J., concurring in the judgment) (quoting Miller v. Fenton, 474 U.S. 104, 116 (1985)).  Whatever the merits of Justice Brennan's argument, it is clear that a single-Justice opinion is not binding precedent.  See, e.g., Hopwood v. State of Texas, 78 F.3d 932, 944 (5th Cir. 1996).  Moreover, cases such as Miller involve "forms of physical and psychological torture," Miller, 474 U.S. at 109, which plainly are not present in

11

Whitelaw's case.  Applying the law to the facts of this case, we conclude that Whitelaw's due process argument is without merit.

III

Whitelaw also appeals his sentence of 46 months' imprisonment. He contends that the district court erred in its loss calculation under the Sentencing Guidelines and that his sentence was imposed in violation of <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000).

A

Whitelaw argues that the district court erred in its calculation of the loss attributable to his conduct under U.S. Sentencing Guidelines Manual § 2F1.1(b).  He asserts that the loss from his state offenses should not be included in the loss calculation because the district court found that his state and federal offenses were not "inextricably intertwined" for Sixth Amendment purposes.

The sentencing court's calculation of loss is a factual finding and is reviewed for clear error.  The court's methodology by which losses are determined, however, involves an application of the Sentencing Guidelines and is reviewed <u>de</u> <u>novo</u>.  <u>See</u> <u>United States v. Saacks</u>, 131 F.3d 540, 542-43 (5th Cir. 1997).

Under § 2F.1.1(b), the offense level of a defendant convicted of crimes of fraud or deceit is increased in accordance with the amount by which the loss attributable to the defendant exceeds $2,000.  If the loss is between $800,000 and $1.5 million, the guidelines warrant an 11 level increase in the offense level.

U.S.S.G. § 2F.1.1(b)(1)(L) (2000). Under the guidelines, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment n.8.

In the context of "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others," relevant conduct for sentencing includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). A district court's finding that conduct was within the scope of jointly undertaken criminal activity is a finding of fact and is reviewed for clear error. See United States v. Smith, 13 F.3d 860, 865 (5th Cir. 1994). The district court held that Whitelaw was accountable for $1,188,618.65 in intended and actual losses, that all such losses resulted from jointly undertaken criminal activity, and that the conduct of Whitelaw's co-conspirators was reasonably foreseeable.

Whitelaw's argument that the district court erred in calculating the loss attributable to him is without merit. First, a review of the PSR reveals that the loss attributable to Whitelaw's state offenses was not included in the total loss calculation. See PSR ¶ 22 (noting that Whitelaw had already been sanctioned for the state offenses). Thus, it is evident that the PSR's calculated loss did not include the 1996 counterfeit checks relied upon in the state court prosecutions. The sentencing court

13

fully recognized this, noting that Whitelaw "is responsible for all of the checks listed on Attachment A, except the 1996 counterfeit State of Texas checks."

Moreover, even if the PSR's $1,188,618.65 calculated loss does include the $261,775 loss from the state offenses, Whitelaw is still accountable for $926,843.65 in losses. Under § 2F1.1(b)(1)(L), he would still be subject to the same 11-level offense level increase. Therefore, any error here is harmless in that "the district court would have imposed the same sentence" absent the error. United States v. Kay, 83 F.3d 98, 101 (5th Cir. 1996) (finding remand unnecessary where sentencing error was found to be harmless by reviewing court).

Whitelaw's primary argument is that the district court contradicted itself by finding that (1) his state and federal offenses were not inextricably intertwined, and (2) the loss from both the state and federal offenses was attributable to him as relevant conduct. Because, as noted above, the loss from his state offenses was not attributed to him in the calculation of his offense level, this argument is without merit.

B

Whitelaw further asserts that, under Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), the amount of loss attributable to him was an essential element of his offense and therefore should have been submitted to a jury and established beyond a reasonable doubt. Under Apprendi, "any fact [other than a prior conviction] that

14

increases the penalty for a crime <u>beyond the prescribed statutory maximum</u> must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 120 S.Ct. at 2362-63 (emphasis added). The prescribed statutory maximum sentence for bank fraud of $1 million is 30 years' imprisonment. 18 U.S.C. § 1344. The guideline imprisonment range for Whitelaw's offense, given the loss attributable to him and his criminal history, was 37 to 46 months imprisonment, and the guideline fine range was $7,500 to $1 million. <u>See</u> PSR ¶ 120. Because the amount of loss did not increase the penalty for the offense beyond the applicable statutory maximum, <u>Apprendi</u> is inapplicable to Whitelaw's appeal.

IV

For the reasons set forth above, the district court did not err in denying Whitelaw's motion to suppress nor in sentencing him to 46 months' imprisonment. Whitelaw's conviction and sentence are therefore

A F F I R M E D.

15